BAILES, Judge.
O. L. Sims Company of Louisiana, Inc., plaintiff-appellant, brings this action against International Engineers, Inc., and its surety, Trinity Universal Insurance Company, defendant-appellees, to recover damages allegedly incurred by plaintiff through the failure of International Engineers, Inc., to perform a certain subcontract entered into between O. L. Sims Company of Louisiana, Inc., and International Engineers, Inc.
Trinity Universal Insurance Company moved for summary judgment. The district court granted the motion for summary judgment and dismissed the plaintiff’s suit against it. Plaintiff appeals.
For the sake of brevity O. L. Sims Company of Louisiana, Inc., will most of the time be referred to as plaintiff; International Engineers, Inc., as International; Trinity Universal Insurance Company, as Trinity; and another entity to figure in the discussion of this case, Delta Equipment and Construction Company, as Delta.
The occurrence of the following events have led to this litigation. In late December, 1960, the plaintiff was the low bidder on that portion of the Baton Rouge expressway to be built between North Boulevard and Government Street in the City of Baton Rouge. Shortly thereafter, a contract for the construction of this portion of the expressway was awarded plaintiff by the State of Louisiana, through the Department of Highways. Either shortly prior thereto or immediately thereafter Joseph R. Burdette, an employee of Delta Equipment and Construction Company, a corporation owned by Arvil Allen Lindley, contacted plaintiff’s general manager, O. L. Sims, for the purpose of obtaining a subcontract to perform certain phases of the work undertaken by plaintiff. On or about January 6, 1961, with the approval of the Department of Highways, a subcontract was entered into between plaintiff and Delta for the performance of certain work for the price of $348,406.75. Trinity furnished the performance bond for this work. Mr. Lindley became the individual indemnitor of this bond to Trinity.
For reasons agreeable to both plaintiff and Lindley or Delta, it was agreed that United Mine Workers union labor would be utilized in this work. As Delta had an existing contract with AFL-CIO, Lindley had his foreman and otherwise business associate, Joseph R. Burdette, organize a corporation called International Engineers, Inc., one of the defendants herein. While it is not clear from the record because of conflicting statements and actions, for the purpose of this narrative of facts, we will say that International Engineers, Inc., is or may be wholly owned by Joseph R. Bur-dette.
After the formation of International, it entered into a labor contract with UMW labor union. After this was done, a new subcontract was entered into between plaintiff and International for the performance of the same work undertaken by Delta in its subcontract with plaintiff. The subcontract with International was likewise approved by the Department of Highways. Trinity issued a performance bond for International to plaintiff, and the Delta subcontract and performance bond were can-celled. Lindley also became the individual indemnitor to Trinity on the International performance bond.
International undertook performance of its subcontract and after about two weeks it began to have labor trouble with AFL-CIO. A picket line was formed by AFL-CIO which caused considerable and disturbing work stoppage. Toward the latter part of March and early April, 1961, Mr. Alvin B. Rubin, a Baton Rouge attorney was retained by plaintiff to work out a settlement of the labor dispute. After certain negotiations were concluded it was agreed that UMW labor would be taken off the job and only AFL-CIO union labor employed. Mr. *438 O. L. Sims had agreed tentatively to seek to have International employ AFL-CIO labor, instead of UMW, however, Lindley refused to permit International to violate its contract with UMW. After some discussion and negotiation between Mr. Sims for the plaintiff and Lindley for Delta and International, it was agreed that they would work out a changeover of the subcontract from International to Delta. It appears that there were some negotiations yet to be made and understandings to be reached in this changeover. (We are not stating with finality exactly what the status of the negotiations were at this time because this clearly appears to us to be the pivotal issue in this case.)
On April IS, 1961, at the office at Attorney Rubin, and in the presence of Messrs. Lindley and Burdette, and other persons whose significance is not disclosed to us by the record, the following letter was signed:
“April 15, 1961
International Unions of Operating Engineers Locals 406, 406a, 406b, 406c
International Hod-Carriers, Building and Common Laborers Union of America Local Unions No.
220, 523, 762, 831, 689, 1177,1229,1450
International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, Local Unions No. 5, 568, 270, 969, 201
Re: Baton Rouge Expressway Proj ect
Gentlemen:
This letter confirms that International Engineers Incorporated has terminated its contract with O. L. Sims and Company Incorporated for work on the Baton Rouge Expressway proj ect, by mutual consent.
There is no claim between us except actual payment for work to date.
Very truly yours,
International Engineers Inc.
By: /s,/ J. R. Burdette
This termination is agreeable to us.
O. L. Sims and Company Incorporated
By: /s/ Alvin B. Rubin
Alvin B. Rubin
AGREED:
(This line blank)
(This line blank)
Attorney
*439 After the above letter was signed, work under the subcontract progressed to some extent, however it appears that all was not well between the contracting companies and the union. There appears to be some question whether the work that was performed ■on the expressway was carried on by International or by Delta, however, it does ^appear that payments for work was made to International.
Sometime subsequent to April 15, 1961, a new subcontract was tendered Delta to replace International that was signed by J. R. Burdette, although it was never accepted by plaintiff because no performance bond was furnished.
Relations between the plaintiff and International and/or Delta deteriorated to such extent that in November, 1961, International and/or Delta failed to further perform any work on the job site and plaintiff put International in default. This action by plaintiff followed.
Plaintiff seeks to recover the sum of $348,406.75, plus ten per cent thereof as attorneys fee, from International as principal on the subcontract, and from Trinity as surety on International’s performance bond. Also, plaintiff seeks the sum of $107,941.73, plus ten per cent thereof as attorneys fee, from International individually.
Plaintiff avers that in accordance with its obligation, International began work and performed a small amount thereof, then refused to further perform under the subcontract ; that at the time of defaulting in its performance, International had earned $37,324.80; that plaintiff was required to complete the work contracted for by International at a cost to it of $636,830.43, plus an additional sum of $130,600.00; that deducting the balance due International on its subcontract had it performed thereunder, there is a balance of $456,348.48; and finally plaintiff avers under the terms of the contract that International owes it a reasonable attorneys fee of ten per cent of the amount sued for herein.
Trinity filed an answer to the petition and also instituted a third party action against International and A. A. Lindley, the indemnitor of International.
Subsequent to this, Trinity filed a motion for summary judgment, thereby seeking the dismissal of plaintiff’s demand against Trinity on the ground that the performance bond issued on February 17, 1961, on the subcontract between plaintiff and International was cancelled on April 15, 1961, by mutual consent of the parties.
Defendant, Trinity, attached to its motion certain affidavits attesting to the receipt of certain interoffice correspondence, and the letters thereof, between certain representatives of Trinity and its agents, and also a photocopy of the letter of April 15, 1961, addressed to the labor unions set forth in full supra. The supporting affidavit of the photocopy of this letter does not state by whom it was delivered to the insurance agent nor the date that it was delivered to him.
The plaintiff filed an opposition to the motion for summary judgment. It attached in support of its opposition various documents, correspondence and papers between plaintiff and International and Delta. It also filed depositions of Mr. Alvin B. Rubin, Arvil Allen Lindley, O. L. Sims and Joseph R. Burdette, and the answers by International and Trinity to interrogatories propounded by plaintiff.
In our examination of the depositions of Mr. Rubin, attorney, taken at the behest of Trinity, and the deposition of Mr. O. L. Sims, taken by defendants, we find the following testimony to be pertinent in our consideration of the question of whether the motion for summary judgment should be granted. Trinity has pitched its motion for summary judgment on the premise that the letter dated April 15, 1961, quoted supra, by mutual consent cancelled the subcontract and thereby terminated its liability on the performance bond. The following interrogation of Mr. Rubin is by the attorney for Trinity: Page 3.
*440 “Q. In connection with your representation of O. L. Sims & Company, were you handling all of the legal work or were you working in connection with one particular transaction here in the City of Baton Rouge?
A. I had been retained in connection with one particular transaction. A Mr. Conner from Hattiesburg, Mississippi, was so far as I knew their general counsel and handled their work generally. I had been retained through my firm to handle the matter of a labor controversy that had arisen in connection with the construction of a bridge across North Boulevard.”
Page 6:
“Q. Now, this letter was intended to do just what it sets for in the comments of the letter, is that correct, Mr. Rubin?
******
A. This letter was intended to get the unions back to work on Monday morning. I’ll be glad to try to — if you want me to try to express my opinion as to the legal effect, I would be glad to. But the problem we concerned with at the moment was getting to work by Monday morning. And in order to answer your question concerning intention, I would have to go into the background of it. If you want me to do that, I’ll ge glad to do that.
Q. Well, I’m sure that Mr. Craig is going to ask you some questions.”
Page 14:
“Q. So far as you were concerned that represented the agreement between the parties?
A. It was my understanding that they had other agreements that had been orally made that did not pertain directly to the settlement of this labor controversy, but Mr. Sims told me that he would handle that with Mr. Lindley.”
Excerpts from the deposition of Mr. O. L. Sims, general manager of plaintiff, O. L. Sims Company of Louisiana, Inc., taken by defendants follow:
Page 51:
“Q. Did you lead him (meaning Lind-ley) to understand that he could deal with Mr. Rubin and whatever they worked out would be satisfactory with you ?
A. Well, in — yes, in these labor relations.”
Page 57:
“Q. Did Mr. Rubin have authority to sign for you?
A. Not to cancel our contract and bond.”
Page 58:
“A. I don’t think I could give you ‘yes’ or ‘no’ because we wasn’t talking about bond and contract. We wasn’t doing a thing but working labor relations.
Q. It is your position here today then—
A. I’ll put it this way. That I had not authorized Mr. Rubin to cancel my contract and bond with International Engineers.
Q. Well, did he — can you state whether he had authority to sign that letter?
A. He did in relations of labor, and that’s what Mr. Rubin thought he was giving them, that they were going to give me the contract and bond right on through on — back to Delta Construction & Equipment (sic).
*441 ■Q. Did you ever tell Mr. Lindley—
A. Rubin wouldn’t have signed that if they hadn’t have told him that. He didn’t have the authority to cancel our contract and bond.”
Our appreciation of the whole of the depositions of Mr. Rubin and Mr. Sims is that the letter of April 15, 1961, was to serve the primary purpose of ending the labor dispute; and not to terminate the ■contractual relationship that existed between the plaintiff and International. There are documents and papers attached to the opposition of plaintiff that infer that International did perform work on the ■contract for some months subsequent to April 15, 1961, to as late as September 6, .1961, and that International received certain money vouchers or checks in payment of ■this work.
It is not our purpose herein to pass on the probative or evidentiary value or effect or the credibility of any of the documents, depositions, affidavits or interrogatories offered either in support of the motion or in opposition to the motion, except insofar as it is necessary to determine and •demonstrate the existence of a genuine issue of material fact.
We would point out that Mr. Rubin was representing the plaintiff in the labor dispute that involved the progress of work undertaken by defendant, International. No doubt the pivotal issue obviously is the effect and significance of this letter of April 15, 1965, which we are not prejudging herein. It is quite clear from a reading of the deposition of Mr. Rubin that there were other agreements to be arrived at apd worked out between the parties.
It should be pointed out that at no time, insofar as we can determine from the offerings made and filed herein, has the plaintiff advised defendant, Trinity, that the subcontract for which it furnished a performance bond was terminated by mutual consent.
We hold that there clearly appears to us to be a genuine issue of material fact between the plaintiff and the defendant, Trinity.
LSA-C.C.P. Article 966 provides:
“ * * * The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.”
In such a case as this the movant must sustain and discharge the burden of showing the absence of a dispute of material fact, and any reasonable doubt of his showing it must and will be resolved against him. See: Perry v. Reliance Insurance Co. of Philadelphia (1963) La.App., 157 So.2d 903, and Spencer v. Traders and General Insurance Co. (1965) La.App., 171 So.2d 723. Kay v. Carter (1963) 243 La. 1095, 150 So.2d 27; Wilkinson v. Husser (1963) La.App., 154 So.2d 490; Touchet v. Firemen’s Insurance Co. of Newark, N. J. (1962) La.App., 146 So.2d 441; Gym Master Company v. Pool (1963) La.App., 157 So,2d 738, and the authorities therein cited.
We find, for the foregoing reasons, that the motion for summary judgment should have been denied by the trial court.
Reversed and remanded.