ELLIS, Judge.
This case was originally before us on appeal from a judgment which sustained a motion for summary judgment and dismissed plaintiffs suit. See O. L. Sims Co. of Louisiana v. International Engineers, Inc., 181 So.2d 436 (La.App. 1 Cir. 1965). At that time, based on affidavits, depositions and other documentary evidence, we determined that there existed a genuine issue of material fact and remanded the case for trial on the merits. The case has been tried and plaintiffs suit dismissed on its merits. Plaintiff has appealed the judgment of dismissal.
We now find the facts to be as follows:
Plaintiff O. L. Sims Company of Louisiana, Inc. is a Louisiana corporation controlled by the O. L. Sims family of Hattiesberg, Mississippi. International Engineers, Inc. is a Louisiana corporation, which at the time of the matter hereinafter to be discussed was controlled by A. A. Lindley of Baton Rouge. This suit was brought by the Sims Company against International and Trinity Universal Insurance Company for damages arising out of an alleged breach of contract.
Sims was the prime contractor for the construction of a section of the Baton Rouge Expressway. International was a sub-contractor on the job. Originally, the sub-contract was awarded to Delta Equipment and Construction Company, Inc., which was also controlled by Mr. Lindley, and which had a labor agreement with the AFL-CIO unions. The Sims Corporation, however, wanted to use United Mine Workers labor on the job and had signed a labor contract with that union. Mr. O. L. Sims and Mr. A. A. Lindley discussed the matter, and it was decided that Lindley and his associates would form a new corporation to be known as International Engineers, Inc., which would enter into a labor agreement with the UMW. When this was done, the contract with Delta was cancelled and an identical contract with International was executed, with Trinity as the surety on the bond.
When work started on the project, it was picketed by AFL-CIO for the reason that those unions had a labor contract with L & A Contractors, Inc., another corporation which was controlled by the Sims family. Apparently, the effect of the pickets was substantially to slow down the work on the project. Sims then retained an attorney to try to work out the labor problem, which by that time had resulted in proceedings being filed before the National Labor Relations Board by all of the parties.
As a result of the negotiations, it was agreed that the labor contract between the AFI^CIO unions and L & A Contractors, Inc., applied to all corporations controlled by the Sims family, including the plaintiff corporation in this case. A letter was written to this effect. At the same time, the following letter, signed by representatives of both Sims and International, was directed to the appropriate unions:
“This letter confirms that International Engineers Incorporated has terminated its contract with O. L. Sims and Company Incorporated for work on the Baton Rouge Expressway project, by mutual consent.
“There is no claim between us except actual payment for work to date.”
On the following Monday, work commenced at the job site with all AFL-CIO labor on the job. Shortly thereafter, the plaintiff mailed to Mr. Lindley a new contract between the Sims Corporation and Delta. The contract was returned, signed but not accompanied by a bond. Sims re *46 fused to accept the contract without a bond and advised that it would hold International to its contract unless a proper bond was received. In the meanwhile, however, Sims had directed a letter to the Highway Department advising them that the contract with International had been cancelled, and a second letter requesting permission to enter into another sub-contract for the rest of the work.
The attorney who handled the negotiations, and prepared the letter for forwarding to the unions, testified that he understood that the contract with International was in fact to be cancelled, and that Mr. Sims and Mr. Lindley had reached an understanding as to how the work was going to be carried out in the future. It also appears clear that International was not in a position to enter into any contract with AFI^CIO since it was already bound by a labor contract with the UMW.
The plaintiff in this case takes the position that the letter to the operating unions as well as the letter to the Highway Department, were intended only to terminate the labor dispute and that they had nothing to do with the contract itself.
This contention is not borne out by the record. It is clear from the facts set forth above that it was impossible to end the strike and still have International on the job, because of its contract binding it to use only UMW labor. The record establishes that, from the time the letter was written notifying the unions of cancellation of International’s contract, only AFL-CIO labor was used on the job. It necessarily follows that International could not have been the sub-contractor, although we are unable to say who was.
We recognize that payments were made to International by Sims after the date of the cancellation. However, this was done by Sims in an effort to breathe life back into the contract when he was unable to get a bond on the subsequent contract with Delta, or to pay for work done prior to the cancellation.
We' further recognize that there were agreements between Mr. Sims and Mr. Lindley as to how the work was to be carried out after the cancellation, although we do not know what these agreements might have been. It is entirely clear that they did cancel the International contract, and that the work was to be carried on by some other contracting entity. We are not concerned with the agreements or misunderstandings of those parties after the cancellation. Whatever rights Sims may have against either Lindley or Delta are immaterial to the question of liability of International, which is a separate legal entity.
We are of the opinion that the judgment appealed from is correct and it is affirmed, at plaintiff’s cost.
Affirmed.