HAMITER, Justice.
Plaintiffs, Mrs. Lillian C. Stevens, testamentary executrix of the Succession of Dr. Noah S. Cutrer, Nicholas P. Olivier and Arthur C. Reuter, alleged themselves to be the owners of certain described property in Plaquemines Parish and instituted the in-, stant proceedings to remove purported “clouds” from its title.
The “clouds” constituted Lease No. 195, which was granted ' initially on February 20, 1928 by the State of Louisiana to one M. Hession for the development of oil, gas’ and other minerals, as well as other instruments executed in connection therewith.' The lease is presently owned by Gulf Oil Corporation, the Estate of William G. Helis, and five partners in that Estate who, along with the Mineral Board of the State of Louisiana, are the named defendants.
Prior to filing an answer the defendants filed a motion for a summary judgment on two grounds: (1) that the first four links of plaintiffs’ title are fatally defective, and (2) that the property involved was adjudicated to the state in 1932 for nonpayment of 1931 taxes due the state, and that any purported redemption by plaintiffs’ ancestor in title was invalid because; it was in contravention of Article IV, Section 2 of the Louisiana Constitution of 1921 which prohibits the state from alienating the fee bed of any navigable waterway.
The motion was sustained by the district court, it declaring that plaintiffs owned no part of the property in dispute. The judgment was affirmed on appeal. 221 So.2d 645. We granted certiorari at the instance of the plaintiffs. 254 La. 452, 223 So.2d 866.
The plaintiffs’ petition sets forth their chain of title (among other allegations), including the following links which are pertinent to this litigation; (1) a transfer dated April 2, 1895 by the State of Louisi *862 ana to the Lake Borgne Levee District (referred to hereinafter as Levee District) signed by the Register of the State Land Office; (2) a transfer in the nature of a correction deed, dated July 27, 1910, by the State of Louisiana to the same Levee District and executed by the State Auditor; (3) a sale of part of the property involved in 1911 from the Levee District to the Plaquemines Land Company; and (4) a similar sale on the same date as Number '3 of the remainder of the property, it being between the same parties. These last two links are called Patents Nos. 59 and 60.
. The petition, together with a supplemental one filed by order of court on defendants’ exception of vagueness, further 'sets forth that the property in dispute is land in the form of “water bottoms”; that it has been of the same nature since time immemorial; and that it was “water bottoms” on each of the dates set forth in the first four links of plaintiffs’ title. Alternatively, it shows that if the property was not “water bottoms” from time immemorial then it had become “water bottoms” by 1895. Also, it asserts that any defect in the title as above set forth was cured by the prescription of six years as provided in Act 62 of 1912, and further that, consequently, such title in this respect is now unassailable. (Reliance is placed on our decisions in Humble Oil and Refining Company v. State Mineral Board et al., 223 La. 47, 64 ,So.2d 839; California Company v. Price et al., 225 La. 706, 74 So.2d 1 (and the cases cited therein) and State v. Cenac et al., La.App., 132 So.2d 897 in which certiorari was denied, 241 La. 1055, 132 So.2d 928).
As aforestated, without filing an answer, the defendants moved for a summary judgment in their favor. Therein they averred that they (the defendants), accepting the plaintiffs’ admissions for the purposes of the motion, “show that according to the maps and plats filed in support of this motion, that the property which plaintiffs refer to as land in the form of ‘water bottoms’, is and was, on the dates referred to by plaintiffs, actually the bed of navigable waters, known or referred to as Black Bay and/or Breton Sound, which are and were bays, sounds and/or inlets bordering on or connected with the Gulf of Mexico, within the Purview of Act 189 of 1910.”
Defendants further asserted in the motion that on November 26, 1932 the property was sold to the state for 1931 taxes which sale was recorded December 31, 1932, and by virtue of the sale the title became vested in the State of Louisiana; and that a subsequent purported redemption thereof by the tax debtor (plaintiffs’ ancestor-in-title) on September 6, 1933 was null and void inasmuch as the property was no longer subject to redemption in view of the provisions of Article 4, Section 2 of the Louisiana Constitution of 1921.
Finally, the motion averred that “in light of.the foregoing, based on-the admissions *864 and allegations of the petition as amended, the exhibits annexed thereto, the affidavit annexed thereto and filed herewith and documents annexed thereto, and interrogatories and answers thereto filed herein, there being no genuine issue as to material fact, defendants move, pursuant to the provisions of Article 966 of the Code of Civil Procedure, for summary judgment herein in their favor since they are entitled to such judgment as a matter of law.”
Although plaintiffs did not file any written response to the motion for a summary judgment, it appears that when the hearing was held thereon they did object to submitting the matter on such motion. Subsequently, they filed a written objection to a decision being rendered on the motion.
As above mentioned, following the hearing, the trial judge rendered judgment on defendants’ motion for a summary judgment, it decreeing that the plaintiffs and their authors in title had never had any valid or effective title in and to the property claimed. Further it overruled the plaintiffs’ plea of prescription predicated on Act 62 of 1912. (However, the judgment does not specifically dismiss plaintiffs’ suit.)
In his written reasons the trial judge observed that it was proper for him to entertain the motion for a summary judgment, he showing that defendants had presented “documentary evidence directed, primarily, at establishing that the ‘water bottoms’ here involved, were in fact the beds and bottoms of navigable bodies of water, Back Bay and Breton Sound — being bays and sounds ‘bordering on or connected with the Gulf of Mexico’ within the purview of the so-called ‘Oyster Statutes’ hereafter discussed, and about which there can be no question.”
The judge further found (in connection with the merits of the motion) that “The various maps and documents submitted in support of defendants’ motion, establish the fact that the ‘water bottoms’ here involved, were and are, in fact, the beds and bottoms of Black Bay and Breton Sound, which were and are navigable bodies of water ‘bordering on or connected with the Gulf of Mexico’ within the purview of the so-called ‘Oyster Statutes’ (The Oyster Statutes referred to are Act 189 of 1910, its predecessors, and those statutes which replaced it.)
He then ruled that each of the four links of plaintiffs’ title (referred to above) were fatally defective for various reasons assigned, among which was that the property in question was owned by the state and was inalienable by virtue of Act 189 of 1910.
The Court of Appeal reversed the district court with respect to the latter’s ruling as to the first two links of plaintiffs’ title, it holding that the validity of those transfers by the state to the Levee District were con *866 trolled by our decision in Humble Oil and Refining Company v. State Mineral Board, supra, and that in view of such decision they were unassailable.
However, the Court of Appeal affirmed that part of the judgment which held that the transfers in 1911 were null for the reasons that Act 189 of 1910 operated as a “retaking” of title by the state to itself (and out of the Levee Board) and that, therefore, the Levee Board in 1911, having no title to transfer, could convey none to Plaquemines Land Company. Alternatively, the court held that if the 1910 act did not have that effect then the purported sales in 1911 were in contravention of the prohibitions of the 1910 act against transfers of such lands to private individuals or corporations; and that they, therefore, conveyed no title and that such defect was not cured by the prescription provided in Act 62 of 1912. (No mention was made in thq opinion as to the propriety of the district court’s rendering judgment on the motion for a summary judgment.)
In the plaintiffs’ application for certiorari (which we granted) they urged (1) that the Court of Appeal erred in holding that links three and four of their chain of title (Patents Nos. 59 and 60) were fatally defective and that such defect was not cured by the Act of 1912 and (2) that the court erred in holding that the case could properly be disposed of on a motion for a summary judgment. (Defendants did not apply for certiorari from that portion of the judgment which held valid the transfers from the state to the Levee Board.)
Statements made in the original briefs filed herein, as well as on the oral argument, created considerable confusion in our minds as to whether or not there were any genuine disputed issues of fact involved in this case. In order to determine whether or not the case could properly be disposed of by a motion for a summary judgment, we posed specific questions on' that matter to counsel for both sides. In answer thereto the defendants still maintain that there is no genuine disputed issue of fact involved. Nevertheless, they insist that if we reverse the judgment of the Court of Appeal on the issues of law now presented the case will have to be remanded to the district court to try numerous questions of fact which they will assert when they file their answer, one of which is “whether the property claimed was land or water bottoms, the present status of the property claimed as land or water bottoms, and the effect of the doctrine of Miami Corporation v. State, 186 La. 784, 173 So. 315, in light of the fact determined.” Also there appears to be some question as to the sufficiency of the so-called patents from the “standpoint of signature and recordation which would require the taking of considererable testimony * * (Italics ours.)
Likewise, in connection with the alternative issue involving the tax sale and re *868 demption, there appears to be a dispute as to the date of the tax redemption which may affect the outcome of this litigation if the court were to decide the first contention adversely to the defendants. This unresolved factual issue is recognized by defendants in their supplemental brief wherein it is stated that “Even plaintiffs’ contention that the redemption reflects an improperly corrected date (it) can readily be solved by the court on the face of the documents.” We do not agree with this statement, particularly in view of the conflicting dates found in the documents submitted by the defendants themselves, one of which also conflicts with the date alleged in the motion for a summary judgment.
If one principle is well established in the cases dealing with motions for summary judgments it is that “In ruling on a motion for summary judgment the court’s function is to determine whether such a genuine issue exists, not to resolve any factual issue." 6 Moore’s Federal Practice 2281, Section 56.15. The defendants insist, however, that in a motion for a summary judgment, permitted by Article 966 of our Code of Civil Procedure, a litigant may present only a part of his case, and to that end he may (as defendants say they have done here) admit certain facts only for the purpose of the motion; but that if he ultimately loses on such facts he can start over and establish a different and even contrary factual situation to which different principles of law are applicable.
We do not believe that the cited article permits such a procedure. Nor would permitting such pleading, in our view, promote the purpose to be served by summary judgments which is to facilitate and speed up the trial of cases. To the contrary, in many cases it will result in “piecemeal” trials and cause unnecessary delays.
Moreover, if we adopt the defendants’ application of the article it would render useless our well recognized pleading of the exceptions of no cause of action and no right of action. We do not believe that the redactors of the Code anticipated such a result. (It might be pointed out that the instant motion for summary judgment has been used as a substitute for an exception of no right of action to attack the plaintiffs’ title, in a title suit, which exception itself, under the circumstances existing here, would not lie. See Wischer v. Madison Realty Company, Inc., 231 La. 704, 92 So.2d 589 and Cattle Farms, Inc. et al. v. Abercrombie et al., 244 La. 969, 155 So.2d 426.)
■ We observe also that through the use of an exception of vagueness the plaintiffs were (as we have heretofore shown) compelled to allege the nature of the property in question (that is, whether it was “water bottoms” or land) presently and on the various dates involved in the first four title. *870 links. We are at a loss to understand under what theory of law the exception of vagueness on this issue was maintained and the plaintiffs ordered to so plead. But, obviously, the purpose of defendants in obtaining such a ruling was to permit them to attempt use of the summary judgment as they have done, because clearly they could not have achieved the result by an exception of no right of action.
The defendants urge that such an application of Article 966 is proper inasmuch as our articles are patterned after Rule 56 of the Federal Rules of Civil Procedure, and the use of such Rule is permitted by the federal courts. They cite 6 Moore’s Federal Practice, Second Edition, commencing at page 2247. However, there is authority to the contrary. See Lloyd v. Franklin Life Insurance Company, 9 Cir., 245 F.2d 896 and Tri-Continental Financial Corporation v. Tropical Enterprises, 5 Cir., 265 F.2d 619. Besides we do not feel compelled to follow such practice in connection with the article involved inasmuch as it is not a replica of Rule 56. One important difference, we note, is that such Rule permits a summary judgment, “interlocutory in character”. Article 966 does not.
Our conclusion, therefore, is that Article 966 was not intended to be used to permit “piecemeal” trial, or usurp the function of the well"recognized exceptions of no right or. no cause of action. Rather, it was intended to be used only in cases where there is no material issue of fact to be determined; where a judgment for either party might be rendered in the case (depending on how the legal issues are resolved); and where such judgment disposes of the entire case. Such a situation is clearly not presented here.
For the reasons assigned the judgment of the district court and of the Court of Appeal entered for the defendants on the motion for summary judgment are annulled and set aside. The motion for a summary judgment is overruled. And the case is remanded to the district court for further proceedings in accordance with law and the views herein expressed. Defendants are to pay all costs of the proceedings in this court and in the Court of Appeal. All other costs are to await a final determination of the case.
SANDERS, J., dissents, being of the opinion that the result reached by the Court of Appeal is correct. See 221 So.2d 645.