235 So.2d 187 (1970)
SINCLAIR OIL & GAS COMPANY
v.
DELACROIX CORPORATION et al.
No. 3983.
Court of Appeal of Louisiana, Fourth Circuit.
May 4, 1970.
Victor A Sachse, III, of Breazeale, Sachse Sachse & Wilson, for Sinclair Oil & Gas Co.
F. Rivers LeLong, New Orleans, for Frank A. Ashby, Jr., Frank R. Bailey, C. T. Cardin and James E. Grady defendants-appellees.
Emile Martin, III, for Boyd & Company, and others defendant-appellee.
Darryl W. Bubrig, Sr., for Jean Mason Bowles defendant-appellee.
Thomas M. McBride, III, Arabi, for Omeadow Robin, Eva R. Mones, Herman Robin and Eleanor Robin defendants-appellees.
Hugh M. Wilkinson, Jr., New Orleans, for Delacroix Corp., Alice Aby, and others, Royalty Owners, Adam Gonzales, and Carroll *188 C. Quatroy and Hazel M. Quatroy defendants-appellees.
Melvyn Perez, Chalmette, for Louis Carmadelle, Gustave W. Carmadelle, Joseph Menesses and Ernest Melerine defendants-appellees.
Blake G. Arata, New Orleans, for Pubco Petroleum Corp. and Union Producing Co. defendants-appellees.
Charles H. Livaudais, Chalmette, for H. Houghton Phillips defendant-appellee.
Jack P. F. Gremillion, Atty. Gen., John L. Madden, Edward M. Carmouche, Asst. Attys. Gen., Charles Romano, Special Asst. Atty. Gen., for Louisiana State Mineral Board defendant-appellant.
Before REGAN, DOMENGEAUX, and SWIFT, JJ.
REGAN, Judge.
The plaintiff, Sinclair Oil & Gas Company, filed a concursus proceeding against the defendants, the State of Louisiana and various private individuals, principally the Delacroix Corporation and persons owning royalty interests dependent upon its title, endeavoring to determine the ownership of production royalty interests from a unitized production area. The principal question posed for our consideration is whether the state or the various private claimants own the water bottom areas within the production units.[1]
The individual owners filed answers to the concursus pleadings in which they claimed to be the owners of all the land and water bottoms included within the unitized area. Briefly stated, the private claimants contend in their answers that the property which forms the subject matter of this litigation was acquired by the state pursuant to the Swampland Grant Act,[2] that the state transferred the land to the Lake Borgne Levee District, and that the Levee District subsequently conveyed the land to one Fernando Estopinal, the common ancestor in title of all of the private claimants.
The state answered the concursus pleadings and claimed title to the water bottoms within the unitized area predicated on several hypotheses among which are the contentions that the water bottoms are navigable and as such constitute sovereignty land; that this land was not transferred to the Levee District; that alienation of the water bottoms was barred by various "Oyster Statutes"; and that fraud annulled the transfer by the Levee District to Estopinal.
Subsequent to the filing of the answers by all of the litigants, the private claimants filed a motion for summary judgment principally predicated upon four grounds. First, they contended that the claim of the state to the water bottoms was barred by Act 62 of 1912 since the state did not file suit to annul the transfer to Estopinal within six years from the act's effective date. Second, certain alleged defects in the transfer from the state to the Levee District had no legal effect upon the title of the present owners. Third, no physical possibility that the state could establish any type of dereliction acquisition of any part of the area in dispute. Finally, they insisted that the state could not vitiate their titles by proof of fraud in the transfer from the Levee District to Estopinal, their ancestor in title.
After hearing arguments and considering the documents submitted with the private claimants motion for summary judgment, the lower court rendered judgment in favor of them and dismissed the state's claim to the water bottoms. From that judgment, the state has prosecuted this appeal.
This case was consolidated with a similar suit arising out of a concursus proceeding *189 involving an abutting unitized area. The suit referred to is also entitled "Sinclair Oil & Gas Company v. Delacroix Corporation, et al.", La.App., 235 So. 191. In the consolidated case, the only difference was the production unit involved; however, all of the issues presented in the main proceeding, as well as the judgment rendered thereon, are identical.
The record discloses that several years ago Sinclair Oil & Gas Company discovered two gas-distillate wells in a marshland area of Plaquemines Parish approximately two miles south of Lake Lery. Sinclair holds several mineral leases from private owners and a mineral lease from the State Mineral Board purporting to cover all state owned navigable water bottoms in the area. The Louisiana Conservation Commissioner established permanent unitized areas for each of the wells involved herein. The units abut each other and each is actually two production units, since the wells are producing from dual completions from two producing sands which were determined to be coextensive for each well. The aggregate area of both production units includes portions of Sections 5, 7, 8, 17 and 18 in Township 15 South, Range 14 East, in Plaquemines Parish.
For the purpose of this opinion, it is not necessary for us to delineate each link in the chain of title from the Louisiana Purchase to the present owners. It is sufficient at this stage of the litigation to point out that on December 19, 1902, a cash sale was consummated before James D. Alexandre, a notary public for St. Bernard Parish, conveying the property in question, together with other property, from the Lake Borgne Levee District to Fernando Estopinal. A record chain of title establishes the conveyance of the pertinent five land sections from him to one of the defendants, Delacroix Corporation. All of the other private claimants acquired their respective interests in the five sections by conveyances from the Delacroix Corporation, so that it may be safely concluded that Estopinal is the common ancestor in title of all of the defendants and private claimants involved in this litigation.
This case poses many complex and highly interesting legal questions for our ultimate consideration. However, an analysis of the record in its entirety reveals that an answer to these questions would be premature in view of the existence of a glaring factual dispute which was left unresolved by virtue of the rendition of a summary judgment herein.
By amended answer, the state endeavored to set forth a cause of action to annul the purported sale by the Levee District to Estopinal on the ground that he acquired the property fraudulently. The amended answer states that at the time of the transfer Estopinal was an official of the Levee District and violated his fiduciary relationship therewith by dealing with himself and transferring to himself the property for an inadequate consideration or no consideration at all. Moreover, the state insists therein that its plea is not barred by prescription because its amended answer was filed to annul the sale in the same month in which the fraud was discovered by it.[3] In their brief, the private claimants treat this question in a cursory manner by simply asserting that the state's amended answer did not properly allege a cause of action for fraud. Alternatively, they assert that even if the cause of action was well pleaded, the private claimants are subsequent bona fide purchasers for value, against whom any fraud on the part of Estopinal would have no effect.
In support of their contentions, they rely on the rationale emanating from the case *190 of State v. Hackley, Hume & Joyce[4] which in fact confirms their contention that a land owner who purchases property for value without knowledge of the fraudulent transactions of his ancestor in title is not vulnerable to an attack on his title because of such fraud. However, that case was not decided on a motion for summary judgment, but was the result of the filing of an exception of no cause of action, and the Supreme Court decided that a cause of action was not stated because the petition should have shown that the acquisition of the property under each and every one of the titles in question was either without valuable consideration or was with notice to the purchaser of the alleged fraud.
We are convinced that a summary judgment will not serve as a substitute for an exception of no cause of action. When the exception of no cause of action is maintained, the plaintiff must be permitted to amend to remove the grounds for objection if he may possibly do so.[5] On the other hand, a motion for summary judgment does not permit an amendment of the pleadings under any circumstances and the judgment rendered thereon constitutes a final judgment with the same effect as if there had been a trial on the merits.[6] Thus it has been reasoned that when there is an insufficiency of the allegations, all of the material facts cannot be before the court and the court cannot possibly decide under such circumstances whether or not there exists a genuine issue of material fact.[7] Therefore, if the private claimants base their defense to the state's allegations of fraud on insufficiency of the pleadings, they have chosen the wrong procedural vehicle in which to ride. The present provisions of the Code of Civil Procedure, as noted above, have limited the effect of the doctrine of State v. Hackley, Hume & Joyce,[8] upon which the private claimants rely, since it dismissed the state's suit at a time when an amendment to the pleadings to state a cause of action was not allowed.[9]
It is highly unlikely that the state can prove Estopinal's asserted fraud after the passage of approximately sixty-eight years, and it appears equally unlikely that any of the private claimants possessed knowledge of such fraud. Nevertheless, the issue raised by the question of fraud as it is now before us is clearly a factual one requiring additional proceedings in the trial court. The situation might be different if uncontroverted affidavits or other documentation permitted by the Code of Civil Procedure had been filed in conjunction with the motion for summary judgment, affirmatively setting forth the fact that the private land owners were bona fide purchasers for value, a defense which would be good even against a well pleaded cause of action for fraud. Under such circumstances, the technical sufficiency of the state's pleading would be immaterial, there would be no issue of fact, and our only task would be a determination of the legal issues thereby presented.
In the very recent case of Stevens v. State Mineral Board,[10] the organ for the Louisiana Supreme Court expounded upon and reemphasized the prohibition implicit in Article 966 of the Code of Civil Procedure, which prevents the rendition of a summary judgment when there remains a material issue of fact to be decided. The court further pointed out that when there is such an issue of fact, decision of the legal principles presented would be premature and would amount to a piece-meal decision *191 of the case. Finding the existence of such factual issues in the case before it, the court forthwith remanded the matter to the trial court for additional action.
A similar situation exists in the case now before us. The existence of fraud and the ultimate defense of a good faith purchase for value are both factual issues requiring the introduction of additional evidence in the trial court.[11] In deciding the propriety of granting a motion for summary judgment, the court's role is one of deciding whether a material factual issue exists and not one of deciding the question, if there is one, on the affidavits and other documents before it.[12]
In the present case, we limit the ratio of our decision to a mere statement that a material issue of fact does exist between the litigants herein which must be resolved on remand to the trial court. It would be improper, and indeed we are circumscribed by the Stevens case, to decide at this point any of the numerous legal questions posed for our consideration by virtue of this appeal. Having refrained from deciding the merits of any factual questions, we reiterate only for the purpose of emphasis, that nothing stated herein should be so construed. We also refrain from making a determination as to the existence of any other material issues of fact which may exist in this case.
For the foregoing reasons, the judgment of the district court is now annulled and set aside, and the case is remanded for additional proceedings consistent with the rationale of this opinion.
The costs of this appeal are to be paid by the individual claimants. All other costs are to await a final determination of the case.
Reversed and remanded.
NOTES
[1] There was originally a dispute between the private claimants with regard to their proportionate unit interests, but this dispute was eliminated by pretrial order, and this issue is no longer relevant to this appeal.
[2] 43 U.S.C. §§ 981-987.
[3] See Board of Levee Commissioners of Tensas Basin Levee Dist. v. Tensas Delta Land Co., 5 Cir., 204 F. 736 (1913); Colley v. Canal Bank & Trust Co., 5 Cir., 159 F.2d 153 (1947); Odoberto v. Virgin, Orleans No. 7986; Brown Shoe Co. v. Unter, La.App., 173 So. 579 (1937); Higginbotham-Bailey-Logan Company v. Unter, La.App., 173 So. 583 (1937); and Kennard v. Yazoo M. V. R. Co., La.App., 190 So. 188 (1939).
[4] 124 La. 854, 50 So. 772 (1909).
[5] See Code of Civil Procedure Articles 933-934.
[6] See Code of Civil Procedure Articles 966, 967 and 968.
[7] See B-W Acceptance Corporation v. Clarkson, La.App., 154 So.2d 67 (1963).
[8] 124 La. 854, 50 So. 772 (1909).
[9] It should be noted that this case was dismissed without prejudice to the state to file the same suit again.
[10] La.Supreme Court, 233 So.2d 542 (1970).
[11] Whether the procedure in the lower court is a trial on the merits or another attempt at a motion for summary judgment, is of course, within the discretion of trial counsel.
[12] Stevens v. State Mineral Board, La. Supreme Court, 233 So.2d 542 (1970); 6 Moore, Federal Practice § 56.15.