249 So.2d 229 (1971)
LATTER & BLUM, INC.
v.
Princess Jane Irby OBOLENSKY (Formerly Jane Irby), Divorced Wife by First Marriage of Prince Alexis Obolensky, Divorced Wife by Second Marriage of Harold H. LIHME, and now Wife of Baron Anton Johan Von RUEKFRANG (Formerly Anthony John Dean Rucker, Jr.)
No. 4424.
Court of Appeal of Louisiana, Fourth Circuit.
June 7, 1971.
*230 McCloskey, Dennery & Page, Moise W. Dennery, New Orleans, for plaintiff-appellee.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Lucius F. Suthon and Donald E. Theriot, New Orleans, for defendant-appellant.
Before LEMMON, TAYLOR and BOUTALL, JJ.
BOUTALL, Judge.
This suit involves a claim by plaintiff-appellee, a real estate broker, against the defendant-appellant, owner of the WDSU-TV building on Royal Street, for commissions on rentals payable under a lease covering said property.
On April 19, 1949, defendant leased this property to WDSU Broadcasting Service, Inc. (hereinafter known as the "1949 lease") for a term of ten (10) years commencing October 1, 1949, and ending September 30, 1959, with the lessee having the privilege of renewing the same for two (2) five-year periods, the last period terminating on September 30, 1969. While the name of the lessee has changed several times, such fact is not material to this litigation. In any event, the lessee exercised all of its renewal rights under the original lease through September 30, 1969.
By a separate agreement, dated April 25, 1949, defendant agreed to pay plaintiff a 6% commission on the monthly rental collected "during the entire term of the lease and/or any extensions or renewals thereof". The agreement provides that the commission is given in consideration of *231 plaintiff's services in negotiating the lease for the original term of ten (10) years and the two (2) five-year renewal periods specifically provided for in the original lease.
Thereafter, on or about June 19, 1965, when the second renewal period still had over four (4) years to run, the lessor and lessee entered into a contract; wherein, among other things, they agreed to a lease (hereinafter known as "1969 lease") for a term of ten (10) years commencing September 30, 1969 (the date of termination of the final five-year renewal option under the "1949 lease"), with an option in the lessee to extend for an additional ten-year period beyond September 30, 1979. It is this lease and the rentals payable thereunder which gave rise to the dispute herein. The plaintiff claims that it is entitled to a broker's commission on the rentals to be paid under the 1969 lease. The defendant insists that plaintiff's commissions stopped at the termination of the 1949 lease, to wit: September 30, 1969.
In its petition, plaintiff seeks to recover from defendant a commission of 6% of monthly rental collected and to be collected for the term of 10 years beginning September 30, 1969, under the 1969 lease, and to reserve his rights to collect a similar commission in the event the lessee exercises its option of renewal for an additional 10 year period beyond September 30, 1979. In response to this petition, defendant filed peremptory exceptions of no right of action and no cause of action which were overruled by the trial court.
Defendant filed answer admitting payments of commission through September 30, 1969, but alleging that the contract of June 19, 1965, was entered into with the lessee without any services of plaintiff being rendered, and that this contract created an entirely new lease agreement in which the plaintiff has no interest or money due.
The plaintiff then filed a motion for summary judgment, contending that there is no genuine issue as to material fact and that, based on the pleadings, documents filed, and the stipulation, plaintiff is entitled to summary judgment as a matter of law. After hearing, the trial court rendered summary judgment in favor of plaintiff as prayed, recognizing plaintiff's right to collect the commissions.
Defendant appeals from this summary judgment, and since it is a final judgment he also urges error in the failure of the trial court to maintain his peremptory exceptions of no cause or right of action. We shall first consider the exceptions.
As to the exception of no right of action, we can conceive no basis for its filing. There is no argument presented as to the lack of interest in the plaintiff to institute the suit and we simply conclude it was urged only as an adjunct of the exception of no cause of action as a matter of past practice and habit.
The peremptory exception of no cause of action is based on three grounds: (1) The agreement between the parties does not provide for the payment of rental commissions for any period beyond the 1949 lease, (2) Lack of consideration and (3) The agreement is a perpetual contract contrary to law and public policy.
At the time of the hearing on the exception the only pleading before the court was plaintiff's petition, to which was attached the commission agreement between the parties dated April 25, 1949, and a notarial deposit of assignment of lease to which defendant was a signatory. The commission agreement reads as follows:
"Latter & Blum, Inc. 919 Gravier Street, New Orleans, Louisiana.
Dear Sirs:
In consideration of your services in negotiating a lease of my property, #516-24 Royal Street, dated April 19, 1949, to WDSU Broadcasting Services, Inc., for a term of ten (10) years, commencing on the first day of October, 1949 and ending *232 on the 30th day of September, 1959, at a net rental of $11,000 per annum, payable monthly in advance, and with the privilege of renewal for a term of five years, beginning October 1, 1959, and ending September 30, 1964, at a net rental of $12,000 per annum, payable monthly in advance, and with a further privilege, in the event the first privilege is exercised, of renewal for a term of five additional years, beginning October 1, 1964, and expiring September 30, 1969, at a net rental of $13,000 per annum, payable monthly in advance,I hereby agree to pay your commission in the amount of Six Percent (6%) of the monthly rent collected during the entire term of this lease, and/or any extensions or renewals thereof.
 Yours very truly,
 S/ Jane Irby Obolensky"
The pertinent allegations of the petition are that plaintiff, as agent, and defendant, as owner of the property, entered into this agreement providing for a 6% commission on rent collected during "the entire term of this lease, and/or any extensions or renewals thereof"; that on June 19, 1965, lessee and lessor entered into a contract agreeing (according to the assignment deposited) "to extend the lease dated April 19, 1949, for an additional ten years * * *"; that defendant has refused to pay commission due on this extension of the lease.
The trial court was called upon to interpret the intent of the commission agreement to determine whether commissions were payable only under the 1949 lease and the two (2) renewals specifically mentioned therein or whether they were payable on extensions or renewals occurring after the contemplated twenty-year term expired. The court reasoned:
"It is the opinion of the Court that `any extension or renewals thereof would have to have reference to any extensions or renewals of the lease beyond the original twenty-year period, otherwise the provision of the agreement would have stopped after the words `during the entire term of this lease'."
In the absence of any evidence or pleadings which may shed additional light upon the subject, we cannot disagree with the trial judge's ruling on the exceptions.
Exceptor has referred the court to the cases of Cotter v. Naomi, 127 So.2d 573 (La.App. 3rd Cir. 1961); Zuzak v. Querbes, 193 So. 258 (La.App. 2nd Cir. 1939). See also Page L'Hote Co. v. Munson S/S Lines, 169 La. 724, 125 So. 868 (1930). The trial court held that the agreements in those cases were distinguishable from the agreement here. We concur in his analysis.
As to the other two bases for the exception, reference to the documents attached to the petition show there is no valid ground for the exception. Consideration is shown by the commission agreement itself in the first sentence thereof. The period of years contemplated herein is shown by both documents to be a prospective ten (10) to forty (40) years if all options under the leases were exercised, certainly not a perpetuity. These bases, as well as the first basis, would seem to address themselves to a defense on the merits, rather than an exception.
Under the peremptory exception of no cause of action, the exceptor must admit the well-pleaded allegations of plaintiff's petition and so for the purposes of this exception we adopt the well-considered opinion of the trial judge as our own:
"The Court is of the opinion that it is impossible to admit all of the allegations of fact pleaded by plaintiff and to then contend that it does not have a cause of action".
We now pass to a consideration of the summary judgment rendered in favor of plaintiff.
*233 The summary judgment was based only upon the pleadings, together with the following documents filed in the record:
1. The commission agreement between plaintiff and defendant dated April 25, 1949.
2. A notarial deposit of assignment of lease from lessee Royal Street Corporation to lessee WDSU-TV Inc., (a change in corporate identity) concurred in by lessor, recognizing all of lessee's rights arising under various documents, and, more particularly, the lease of April 19, 1949, and the contract of June 19, 1965.
3. Stipulation between plaintiff and defendant that plaintiff collected the rent for October, November, and December of 1969 and retained 6% thereof, subject to any judgment to be rendered by the court.
Although the trial court did not render written reasons for summary judgment, it obviously based judgment on two findings: (1) The commission agreement dated April 25, 1949, required commissions to be paid for any renewal or extension of the 1949 lease beyond those two mentioned therein; and (2) The present arrangement between lessor and lessee is an extension or renewal of the 1949 lease. As to the first, the trial judge clearly pointed out his interpretations of the commission agreement in his well-considered reasons for judgment in ruling on the exceptions. The second finding is necessary to the rendition of the summary judgment.
We shall discuss each separately with relation to the procedural aspect thereof, that is, summary judgment.
The general rule is that the motion for summary judgment is not a substitute for trial and may not be resorted to when there is a genuine issue of material fact which must be resolved in order to entitle the mover to a judgment as a matter of law. In passing upon motion for summary judgment, the court's function is not to determine the merits of the issues raised, but, rather, to determine only whether there is a genuine issue of material fact. Stevens v. State Mineral Board, 255 La. 857, 233 So. 2d 542 (1970); Sinclair Oil & Gas Company v. Delacroix Corporation, 235 So.2d 187 (La.App. 4th Cir. 1970); Acadia-Vermillion Rice Irrigating Co. v. Broussard, 185 So.2d 908 (La.App. 3rd Cir. 1966).
The first issue before us is the interpretation of the commission agreement dated April 25, 1949. This was put at issue by the plaintiff pleading the document itself; and further, that refusal to pay commissions after September 30, 1969, the termination of the 1949 lease, was in violation of that document. The defendant in answer admits the execution of the document and pleads that it is the best evidence of its contents. She denies that her refusal to pay is in violation of the document and she alleges that the agreement was prepared by plaintiff and any ambiguity should be construed against plaintiff. There were no affidavits furnished in connection with the motion for summary judgment bearing upon the intent of the parties nor any allegations in the pleadings which may further assist the court in its interpretation of the document. There is only the bare document.
While there exists a possibility that the defendant could have here raised a factual issue, she does not do so; and the motion for summary judgment, in such instance, is a proper procedural method of determining the meaning of the document. Welsh Southern Oil Company v. Scurlock Oil Company, 201 So.2d 376 (La.App. 3rd Cir. 1967). However, we do not intend to pass upon the correctness of the trial judge's first finding because of our conclusions reached in considering the second finding.
We conclude that the second finding is not a proper matter for summary judgment in this case. The basic issue is whether the 1969 lease is a renewal or extension of the 1949 lease. The record does not disclose that these two (2) leases were offered in *234 evidence for consideration of their terms and conditions, or, in fact, whether a written 1969 lease was actually executed between the parties. Defendant refers us in her answer to the contract of June 19, 1965, as the basis for the lessee remaining in the building. This document, although it "* * * grants to lessee an extension of the lease * * * on the same terms and conditions of the present lease [grants such extension] subject to any modification thereof as agreed to by the parties".
That document, by its very statements, certainly intended that another lease would be drawn at a later time, possibly after the completion of the rather extensive repairs to the premises which were the subject of the negotiations at that time. In discussing changes in the plans for repairs, the document states that such changes "shall in no way be deemed a modification or amendment of the terms of any lease presently existing or intended to be executed between the parties hereto in connection with this settlement". Thereafter, it states "The parties hereto agree to amending paragraph 10 of the present lease to read as follows which amendment shall be included in the new lease when drafted: * * *".
However, if we consider that there was no written 1969 lease between lessor and lessee, and that occupancy is continued by virtue of the contract of June 19, 1965, we still do not have before us the 1949 lease for comparison of its provisions. Simply because the 1965 contract uses the words "grants to lessee an extension of the lease", it does not necessarily follow that this contract constitutes in fact or law one of the "extensions" of the lease as contemplated in the commission agreement of April 25, 1949. After all, these two (2) documents were made some sixteen (16) years apart, drawn by different persons, and executed by different parties (only one in common, the lessor) to regulate the mutual obligations between them. Under such conditions, reference must be had to provisions of the documents themselves, and the legal effect thereof, to determine if the new lease is actually an extension of the old one.
The contract of June 19, 1965, is obviously much more than a simple extension of a lease. It is basically a contract between the landlord and tenant to settle a number of lawsuits arising out of damage to the leased premises and out of interference with the operation and use of the premises caused by the construction of the Royal Orleans Hotel on adjacent property. The document recites the lawsuits involved and sets forth an amount of actual damages and necessary repairs in excess of $96,000.00. It proposes to accept an offer of $61,766.03 in full settlement of all claims against everyone involved (the amount of these claims is unspecified but obviously in excess of the $96,000.00 mentioned above). Upon such settlement, the lessor and lessee agree to release all claims against each other and all others involved in the suits. Some of the settlement money is to be applied in particular fashion, but the bulk, $53,711.46, is to be used for repairs to the premises as proposed. In general, the lessee is to bear the responsibility and costs of the repairs, including whatever loss of use of the premises may occur, and agrees to leave the premises in the same condition as reconstructed and repaired, rather than as when it assumed occupancy in 1949.
In return, the lessor grants the right to lessee to lease for another ten (10) years from termination of the original lease with a 10-year option of renewal, raises the rental to $18,000.00 per year, subject to negotiation if the option is exercised, and amends certain portions of the lease relating to obligations of repairs, loss of use through destruction or damage, etc.
At first glance, it would appear that this document would come within the rationale of the case of Ernest A. Carrere's Sons v. Levy, 191 So. 747 (La.App.Orl.1939); wherein, it was held that the change of the rental from $9,000.00 per year to $8,000.00 per year plus the installation of an air *235 conditioning system in the building was not an extension or renewal because that change in rental was a vastly different consideration than stipulated in the renewal privilege. Such a difference is also apparent here. Besides a change in rental from $12,000.00 annually to $18,000.00 annually, there are, as part of the consideration, agreements to settle a number of law suits, undertake the responsibility of considerable repairs and reconstruction, and change certain other obligations of the lease.
However, a closer examination of the document shows that without reference to other documents and facts, we could not properly evaluate a number of these provisions to determine the extent of the change which may be effected. Since this is before us on an appeal from summary judgment, we can only conclude that there are indeed a number of material facts not clearly established so as to enable us to maintain summary judgment as a matter of law. Without attempting an exclusive list, we point to the following: absence of the 1949 lease; absence of the 1969 lease or facts relating thereto; absence of facts relating to the extent of rights compromised in the various lawsuits; absence of facts relating to actual extent of repairs and costs thereof; absence of facts relating to purpose of occupancy of two upper floors of the premises. All of these questions arise by examination of the contract document of June 19, 1965, tendered by defendant and demonstrate the unavailability of summary judgment herein.
The law is clear that upon trial of a motion for summary judgment, the burden of proof rests upon mover to convincingly show absence of a genuine issue of material fact, and that mover is entitled to judgment as a matter of law. Yates v. M & N Constructors, Inc., 238 So.2d 793 (La.App. 1st Cir. 1970). Until mover discharges this initial burden of proof, the obligation of countering by the other party does not arise. Perry v. Reliance Insurance Co. of Philadelphia, 157 So.2d 903 (La.App. 1st Cir. 1963). This burden is such that all reasonable doubt should be resolved against the mover, O. L. Sims Co. of Louisiana v. International Engineers, Inc., 181 So.2d 436 (La.App. 1st Cir. 1965); Brandt Glass Co. v. Trinity Universal Insurance Co., 172 So.2d 744 (La.App. 4th Cir. 1965). If any doubt exists, a trial on the merits should be had to resolve those doubts. Butler v. Travelers Insurance Co., 233 So.2d 271 (La. App. 1st Cir. 1970); Fontenot v. Aetna Insurance Company, 225 So.2d 648 (La. App. 3rd Cir. 1969); Guichard v. D. M. Greenup, 187 So.2d 516 (La.App. 4th Cir. 1966); Banes v. Prinz, 185 So.2d 50 (La. App. 4th Cir. 1966).
We are of the opinion that the mover has not discharged the burden of showing that no dispute exists as to material fact. The consideration for the present occupancy of the leased premises by the tenant is apparently the contract of June, 1965; and that document, by its very terms, points out a number of unanswerable questions of fact which affect the comparison of the terms of the 1949 lease with the present lease, whatever it may be.
For the reason assigned, the summary judgment in favor of plaintiff is reversed and set aside. This case is remanded to the trial court for further proceedings in accordance with law and the views herein expressed. All costs of this appeal are assessed against plaintiff-appellee.
Reversed and remanded.