SAMUEL, Judge.
Plaintiff is a real estate brokerage firm. The defendant is the owner and lessor of a building located at 516-524 Royal Street in New Orleans. The object of plaintiff’s suit is to recover brokerage commissions claimed by it under an April 25, 1949 agreement between it and the defendant. A summary judgment in favor of the plaintiff was remanded by this court for further proceedings.[1] Following remand and after a trial on the merits, the district court rendered judgment ordering defendant to pay plaintiff brokerage commissions of 6% of the rental received for the 10 year period commencing October 1, 1969, together with an identical commission for an additional 10 years in the event the lessee should exercise an option to renew the lease. The defendant has appealed.
On April 19, 1949, defendant leased the property to WDSU Broadcasting Services, Inc. for 10 years. The lease contained two 5-year renewal options, with the second renewal period ending on September 30, 1969. On April 25, 1949, defendant consented by letter agreement prepared by a representative of the plaintiff, in consideration of its services in negotiating the lease with privilege of renewal, to compensate the plaintiff by granting it a commission of 6% of the monthly rent collected during the term of the lease, “and/or any extensions or renewals thereof.”
The lease was assigned on several occasions, and either the original lessee or an assignee exercised both renewal options. On June 19, 1965, during the term of the second renewal option of the 1949 lease, the defendant owner and Royal Street Corporation, an assignee of the original lessee, executed an agreement by which the lessee was permitted to remain on the property for an additional 10 year period commencing September 30, 1969, the termination of the second renewal period of the 1949 lease. This agreement also contained an option allowing the lessee to renew for an additional period of 10 years beyond September 30, 1979. While the document grants to the lessee an extension of the existing lease, it does contemplate the drafting of a new lease.[2]
The only testimony on behalf of plaintiff is that of Shepard M. Latter, one of its firm members. He testified he handled the negotiations for the 1949 lease, but admit *372 ted he had nothing whatsoever to do with the 1965 agreement or with the negotiations which culminated in the execution of that agreement. It was stipulated that if the defendant herself were present, she would testify she had no independent recollection of the 1949 letter agreement other than that it was submitted to her for her signature and that she did in fact sign it.
The only issue before us is whether the 1965 agreement was a new contract or merely an extension or renewal of the April 25, 1949 lease agreement. If it is a new contract, plaintiff is not entitled to recover; if it is merely an extension or a renewal of the old contract, plaintiff is entitled to recover a 6% commission on the monthly rental collected during such extension or renewal. We hold that the 1965 agreement was a new contract and that the ruling of the trial court must be reversed.
The defendant’s property is adjacent to the Royal-0 rleans Hotel. During the construction of that building there was substantial damage to the leased property as well as to other properties in the surrounding area. Consequently, numerous law suits were filed, including: (1) a suit for $91,367 by the present defendant for damages to the property in suit against the owners of the hotel, the contractors involved in its construction, and their respective insurance companies; (2) a suit against the present defendant by her tenant for $62,921, representing the amount allegedly necessary to effect repair of the building, or alternatively, for a judgment directing the defendant to repair the building herself, together with a demand for $25,500 representing losses caused by the tenant’s interruption of business;[3] and (3) two other suits by the owners of properties at 535 Chartres Street and 615 Toulouse Street, located next to the defendant’s building, for damages to these buildings caused by the hotel construction.
The defendants or cross defendants, being primarily the owner, contractors, and various insurers connected with construction of the Royal-Orleans Hotel, proposed a settlement or compromise by which they offered the sum of $61,766.03 in settlement of all claims and cross claims. From this sum, $4,911.57 was paid to the lessee and owners of the adjacent properties for emergency repairs by the lessee and for damages to 535 Chartres Street and 615 Toulouse Street. In addition the sum of $3,143 was paid to the lessee to reimburse it for expenses incurred in shoring part of the defendant’s building known as the “slave quarters”. The remaining sum of $53,711.46 was deposited in a bank to be used only for the repair of the defendant’s property. The agreement between defendant and her lessee provided that the latter was to hire and supervise architects and contractors in effecting repairs to the defendant’s building, and the lessee agreed to absorb any additional cost in repairing the building in excess of the sum designated for that purpose. A further condition of the agreement was that the defendant consent to the lessee’s continuation of occupancy of the premises for an additional 10 year period to commence at the expiration of the 1949 lease on September 30, 1969. The rental for this original 10 year period was fixed at the sum of $18,000 per year, as opposed to the $12,000 per year paid under the 1949 lease. The parties also agreed the lessee should have an option for still an additional 10 year period at a rental to be determined by arbitration in the event of their inability to agree on a renewal rental. Moreover, the lessee agreed to assume the risk of business interruption during the construction and repair of the building, at no risk or expense to the defendant.
In the 1965 agreement the parties recognized that the nature of the building had changed from apartment house use to use *373 as an office building. The 1949 lease, which is now in the record, stated that the lessee could make changes and improvements in the building provided it restore the premises to the same condition at the end of the lease. The 1965 agreement recognized that the two top floors, which were originally designed for apartment house use, were then being used for office space. The repairs made in 1965 were to be made according to the office building use, and the lessee was no longer obligated to restore the building at the termination of the lease to the same condition and order in which it existed in 1949.
Moreover, in addition to a $6,000 per year increase in rental in the 1965 agreement, to commence on October 1, 1969, the 1965 agreement granted to the lessee the right of first refusal to purchase the property in the event the defendant received a bona fide offer to purchase which was desirable to her. The lessee did not have such a right of refusal in the 1949 lease.
In the 1949 lease, any necessary structural alterations were to be made at the expense of the defendant, unless these alterations were required by the lessee’s use of the property or by changes or improvements made by the lessee. However, the 1965 agreement imposed all responsibility for the structural soundness of that part of the leased premises known as the “slave quarters”, and the manner in which it was connected to the other portions of the building, during the remaining term of the lease upon the lessee.
Finally, the 1965 agreement contains extensive provisions which were intended to clarify the obligations of the defendant and the lessee in the event the property should sustain a casualty loss. Under the new agreement, the defendant had the option to make any necessary repairs or to advise the lessee if she did not intend to do so. In the event the defendant did not choose to have the necessary work performed, the lessee then had the option of either terminating the lease or making the necessary repairs by using only insurance money collected for that purpose. In the event that insurance money was not sufficient, the lessee could use its own funds, but it did not have the right to claim reimbursement from the defendant. No comparable provisions were contained in the 1949 lease.
The foregoing distinctions between the 1949 lease and the 1965 agreement show that the parties did not contemplate or enter into a mere extension or renewal of the 1949 lease. On the contrary, they intended to, and did, create a new and different lessor-lessee relationship as of October 1, 1969. The legal effect of their action was to create a completely new lease contract between them.
The reasoning of this court in Ernest A. Carrere’s Sons v. Levy,[4] is persuasive in the matter now before us. In that case the owner of a building in New Orleans executed a lease for a term of sixty-four months beginning on June 1, 1932 and ending on September 30, 1937. The lease contained an option in favor of the lessee to extend its term for an additional five years from October 1, 1937 to September 30, 1942 at an annual rental of $9,000. The owner-lessor paid a brokerage commission for the original lease and also agreed to pay a commission of 4% of the rentals if the lessee exercised1 the option to renew. Prior to January, 1937 a new owner of the property and the same tenant negotiated a lease for a five year period beginning October 1, 1937 and ending September 30, 1942, at an annual rental of $8,000 per year with the understanding that the lessee would install air conditioning in the building at its own expense. The real estate agent sued for the 4% commission on the rentals for the 5 year period beginning October 1, 1937. The court stated, inter alia, that no commission was due the realtor and that the contract was a new lease rather than a mere renew *374 al of the old lease. The court pointed out that the right of renewal was an absolute right vested in the lessee, and that no negotiations were necessary since a simple written notice to the lessor would have been sufficient to extend the lease. However, it held that more than a mere automatic renewal was involved when a lessee agrees to pay an annual rental and additionally place air conditioning in the leased premises at its own expense. The court concluded the contract was a new lease and the agent was not entitled to a commission for an extension of the old lease.
Here, the 1965 agreement is likewise a new contract. The parties recognized the changed character of the building from an apartment house to an office structure, the rental was raised from $12,000 to $18,000 annually, an additional 10 year option was extended to the lessee, the lessee was given a right of first refusal to purchase the premises, the lessee assumed responsibility for the structural integrity of certain portions of the building, the obligations of the lessee to restore the premises at the termination of the lease were vastly changed, and the 1965 agreement contained a new provision regarding the mutual obligations of the parties in the event that the leased building should sustain a casualty loss. In so agreeing, the parties settled pending law suits against each other. Such an extensive revision and realignment of the mutual rights and obligations of the defendant-owner and the lessee cannot be reasonably construed to be a .mere extension of a previously existing lease, but must be construed in its substance as a new lease contract. Since the 1965 agreement was a' new contract, the plaintiff is not entitled to the commissions to which the defendant had agreed based on actual collections of rental under the original 1949 lease and as that agreement might be extended.
For the foregoing reasons, the judgment appealed from is reversed and it is now ordered that there be judgment in favor of the defendant, Princess Jane Irby Obolen-sky, and against the plaintiff, Latter & Blum, Inc., dismissing the plaintiff’s suit; plaintiff to pay all costs in both courts.
Reversed.

. La.App., 249 So.2d 229.

. We find it unnecessary to repeat some of the factual discussions contained in our opinion prior to remand, La.App., 249 So.2d 229.

. The present defendant filed third party demands against the hotel owner, its contractors and their respective insurance companies requesting judgment against them in the event that the suit against her was successful.

. La.App., 191 So. 747.