395 So.2d 658 (1980)
Frances Radosta De FELICE, wife of and Stephen J. De Felice
v.
Herbert J. GARON and Rufus M. Carimi.
No. 66993.
Supreme Court of Louisiana.
October 10, 1980.
On Rehearing March 2, 1981.
*659 Victoria L. Bartels, William F. Wessel, New Orleans, for plaintiff-applicant.
Milton E. Brener, Garon, Brener & McNeely, New Orleans, for defendants-respondents.
William F. Wessel Professional Law Corp., New Orleans, for plaintiff-applicant on rehearing only.
Mack E. Barham, Barham & Churchill, New Orleans, A. N. Yiannopoulos, Saul V. Litvinoff, Louisiana State University, Baton Rouge, of counsel, for defendant-respondent on rehearing only.
PER CURIAM.[*]
In an excellent and well reasoned opinion, the Court of Appeal reversed the trial court judgment (upon motion for summary judgment) which had invalidated an agreement by which two of the five respondents, Garon and Carimi, had secured the right to control the management of the corporation, Pascal's Manale, Inc.
That agreement (essentially contained in two contracts, a "Joint Venture Agreement", and a "Voting Trust Agreement"), was entered into coincident with respondents' assisting relator in borrowing $600,000.00 by personally guaranteeing her loan and posting security valued in excess of $200,000.00.
The pertinent facts surrounding the agreement and its contractual provisions, as well as the Court of Appeal's legal reasons, are set out in the Court of Appeal opinion which is reported at 380 So.2d 676. A portion of that opinion, principally that which recites the facts, is contained in an appendix to this opinion.
Essentially the Court of Appeal made the following determinations: that the contract did not contain an invalidating potestative condition; that although the provisions of R.S. 12:78, requiring two or more shareholders for the creation of a voting trust, did render the "Voting Trust Agreement" here invalid as a voting trust, it was of no particular moment in the context of the overall circumstances; that the contract, in which substance rather than title determines its nature, was such as to constitute defendants pledgees rather then trustees; that respondents were pledgees upon whom the owner of the stock had expressly conferred by contract the right to vote the shares, with the implicit right in *660 the pledgee to obtain a transfer of the shares upon the books of the corporation, a transfer contemplated and statutorily authorized by R.S. 12:75(D); that such contract was not invalid as a contract which separates voting rights from ownership interests, but valid as a contract authorized by R.S. 12:75(D); and that the pledgee may enforce the contract by having the shares of stock transferred into his name on the books of the corporation during the existence of the pledge.
We now conclude that the judgment and reasons of the Court of Appeal are correct, and the writ improvidently granted by this Court.

Decree
Accordingly, the judgment of the Court of Appeal is affirmed and the case remanded to the district court for further proceedings.
AFFIRMED; REMANDED TO THE DISTRICT COURT.
WATSON, J., dissents and assigns reasons.
DENNIS, J., dissents with reasons.

APPENDIX
"Prior to the execution of the contract at issue, plaintiff was the owner of 50% of the shares of stock in Pascal-Manale, Inc., and defendants Garon and Carimi were the attorney and accountant respectively for the corporation. Plaintiff had contracted to purchase the other 50% of the stock from her sister for the price of $450,000.00, but had difficulty obtaining financing. Through defendants' efforts a bank agreed to lend plaintiff $600,000.00 (which included the pay-out of an existing $150,000.00 loan), but required the pledge of the corporate stock and mortgages of other property owned by plaintiff, as well as personal guaranties by defendants and three other persons (intervenors in this suit) and additional security valued in excess of $200,000.00 to be furnished by defendants and intervenors.
"As part of the agreement to guarantee the loan and furnish the necessary security defendants and intervenors required plaintiff to execute two contracts. In the first contract, entitled Joint Venture Agreement, the parties stated that it was in their best interest for the corporation to be managed and directed under a definite and fixed policy in order to properly develop the corporation's business opportunities and to repay the loan, and they agreed that defendants and intervenors would guarantee the loan and provide the additional security and that plaintiff would pay them $2,000.00 per month during the term of the loan (or a minimum of $120,000.00). Plaintiff further agreed that, in the event of her default on the note, she would assign all of her interest in the corporation to defendants and intervenors upon their demand, subject to plaintiff's right to reacquire the stock within 60 days by paying all sums expended to remedy the default.
"In the second contract, entitled Voting Trust Agreement, plaintiff, as sole shareholder, and defendants, as trustees, reasserted that it was in plaintiff's best interest for the corporation to be managed and directed during the next ten years under a definite and fixed policy, and for this purpose plaintiff `requested' defendants to hold legal title to the stock in trust for ten years under the contract terms. Defendants were further given the unqualified right to vote the stock as shareholders, free from any interference by plaintiff, but without liability as shareholders, and were also given the following powers:
`a) The right to vote for election of directors and in favor of or in opposition to any resolution or proposed action of any character whatsoever which may be presented in any meeting requiring the consent of shareholders of the corporation;
`b) The right to set salaries, bonuses, and other compensation for all employees, agents, officers, and directors of the corporation;

*661 `c) The right to declare all dividends;
`d) The right to hire and fire all personnel employed by the corporation;
`e) The right to approve of any and all remodeling, alterations and repairs of any property owned or leased by the corporation;
`f) The right to authorize and approve all capital expenditures for any purpose whatsoever; and
`g) The right to dispose of the collateral securing the debt of shareholder in any manner deemed appropriate by the trustees and to pledge the stock to secure any corporate loan.'
The contract specified a term of ten years, but reserved to the trustees the right to terminate the agreement sooner by unanimous vote."
WATSON, Justice, dissenting.
For the reasons assigned by Justice Dennis and the following additional reasons, I respectfully dissent.
The majority ignores the well established legal principle that an attorney dealing with a client must exercise the utmost care to avoid taking advantage of his client and, accordingly, that any contract between them is strictly construed against the attorney. In the present case, the contract is being liberally interpreted in favor of the attorney and against the client.
The majority is allowing by indirection what cannot be done directly under the business corporation law. A proxy can be granted for a maximum of three years. LSA-R.S. 12:75 C(3). The only other devices for granting another the right to vote stock are (1) a voting trust, which was not validly established here, and (2) pledge with transfer of the stock to the pledgee. Finding the attempted "Voting Trust" invalid, the majority incorrectly concludes that it is actually a pledge about which the parties neither thought nor spoke. The purported contract between plaintiffs and defendants should be voided.
I dissent from the validating through strained construction of an invalid contract.
DENNIS, Justice, dissenting.
I respectfully dissent. I am troubled by the majority's decision to affirm the court of appeal decision without addressing the questions that provoked us to grant the writ initially. Specifically, these questions are: How can a written contract prepared by an attorney for the purpose of establishing a voting trust be held enforceable as a pledge of stock when the contract never expressly mentions pledge, when the substance of the agreement does not reflect that the parties intended a pledge, and when the requirements for a valid pledge were not met? How can an appellate court in reversing a summary judgment also determine before a trial on the merits the legal consequences of a contract that is pregnantly ambiguous as interpreted by the court of appeal?
Perhaps there is a sound legal basis for the result reached, or perhaps the case should be remanded for a trial on the issue upon which summary judgment was granted and now reversed. However, I am unable to agree with the court of appeal opinion as written or with the majority's approval of it without dealing with the questions prompting this court's review.

ON REHEARING
FEDEROFF, Justice Ad Hoc.[*]
Defendants have moved to dismiss plaintiffs' application for rehearing as moot. The issue and its resolution are best explained by an outline of the proceedings to date.
Plaintiffs sue to enjoin defendants from exercising authority purportedly conferred on them by a voting trust agreement. They also seek damages caused them by defendants acting under this authority.
At the hearing of a rule for preliminary injunction, held before another division of *662 the district court during the Summer recess, the parties stipulated that if the voting trust agreement were invalid defendants should be enjoined from acting under it. The court nevertheless denied the injunction because there was no showing of irreparable injury. Thereafter plaintiffs in the regular term of court moved for a partial summary judgment "declaring the Voting Trust Agreement to be null and void". The court held in reasons for judgment that the agreement was invalid and entered what was termed a preliminary injunction. Suspensive appeal was denied by the district and appellate courts because the appeal was not taken within fifteen days as required by C.C.P. art. 3612. This Court granted writs and ordered the suspensive appeal. The case was then appealed to the Court of Appeal which treated the appeal as one from a partial summary judgment.
The Court of Appeal agreed with the district court that the agreement was invalid as a voting trust since the trust was established by a single stockholder, and not at least two shareholders as required by R.S. 12:78. The court went on to hold however that the contract was valid as a pledge which expressly conferred on the pledgees the right to vote the stock, an arrangement authorized by R.S. 12:75(D).[1] The case was thereupon remanded for further proceedings.
We granted review and in our original opinion approved the decision of the Court of Appeal. Rehearing has been granted.
While the case was pending on rehearing, defendants filed the motion to dismiss plaintiff's application for rehearing as moot, to which they attach an affidavit declaring that the plaintiffs have recently refinanced their bank loan, that defendants have been released as guarantors and their collateral returned to them, and that they in turn have surrendered all right to control the business, thus making moot any need for injunctive relief. These facts of course are not part of the record before us. However the matter was considered at the oral argument on rehearing during which counsel for plaintiffs made no objection to the submission or the content of the affidavit. The case should therefore be treated as presumptively moot and remanded for confirmation of the facts suggested by the motion. Vacuum Oil Co. v. Cockrell, 174 La. 60, 139 So. 759 (1932); Succ. of Elrod, 371 So.2d 796 (La.1979).
The reason such a transaction would render the appeal moot requires further explanation. The Court of Appeal, apparently attempting to understand why this Court had ordered a suspensive appeal not taken within fifteen days from a preliminary injunction, treated the appeal as one from a partial summary judgment simply "declaring" the voting trust agreement invalid. While it is true that plaintiffs' rule for a partial summary judgment simply asked for a declaration that the voting trust was invalid, their motion must be understood in light of the earlier stipulation that if the instrument were held invalid, an injunction should issue. Thus, having concluded the instrument was invalid, the trial court in response to plaintiffs' motion issued an injunction.
The reason the suspensive appeal was ordered was not that the judgment was one simply declaring the voting trust invalid, but rather that it was a permanent injunction and not, as it was styled, a preliminary injunction. Having been rendered on a motion for summary judgment, the injunction was of necessity a final judgment and therefore appealable within the ordinary delays. C.C.P. art. 968.[2]
It would have been improper to render partial summary judgment simply declaring *663 the contract invalid. Summary judgment may not be employed to have a court pronounce judgment merely on some underlying issue in the case, since C.C.P. art. 966 provides that any party may move for summary judgment in his favor for all or part of the relief for which he has prayed. See Stevens v. State Mineral Board, 255 La. 857, 233 So.2d 542 (1970); Smith v. Hanover Insurance Company, 363 So.2d 719 (La.App. 2d Cir. 1978); Beckham v. Hartford Accident & Indemnity Company, 137 So.2d 99 (La.App. 3rd Cir. 1962).
This appeal therefore is one involving the plaintiffs' prayer for injunctive relief and where the need for injunction is obviated before that issue is finally disposed of, the court should treat the case as moot and express no opinion on the merits thereof.
It should be noted that neither the judgment of the district court nor the opinion of the court of appeal, nor the original opinion of this court has ever become final and none of them should be treated as establishing the law of the case.
We would ordinarily grant the motion to dismiss and remand the case to the trial court for it to determine if the need for injunction is moot; but because our consideration of the merits of the appeal results also in a remand we will entertain the merits.
We agree with the Court of Appeal that the summary judgment ordering the injunction should not have issued. The opinion of the Court of Appeal however went further than it should have. Plaintiff had moved for summary judgment seeking the injunction. The Court of Appeal disagreed, but in doing so concluded that the contract was a valid pledge. While the contract does not qualify as a valid voting trust, and while it may be subject to a construction or even reformation that would qualify it as an R.S. 12:75 D pledge, or some other innominate agreement binding on the parties, such a construction or reformation is not supported by the record compiled in support of the motion for summary judgment.
Because of the "law of the case" doctrine this opinion, if allowed to stand, more than likely would foreclose reconsideration of this issue by the trial court, and the Court of Appeal on any subsequent appeal. Justice Tate described the scope and effect of the doctrine in Petition of Sewerage & Water Board of New Orleans, 278 So.2d 81 (La.1973):
"The law of the case principle relates to (a) the binding force of trial court rulings during later stages of the trial (b) the conclusive effects of appellate rulings at the trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal in the same case. Among reasons assigned for application of the policy are: the avoidance of indefinite relitigation of the same issue; the desirability of consistency of the result in the same litigation; and the efficiency, and the essential fairness to both sides, of affording a single opportunity of the argument and decision of the matter at issue.
Nevertheless, the law of the case principle is applied merely as a discretionary guide: Argument is barred where there is merely doubt as to the correctness of the former ruling, but not in cases of palpable former error or so mechanically as to accomplish manifest injustice."
See also Coney v. Coney, 218 La. 218, 48 So.2d 902 (1950). In fact, had we denied the writ of review which brought this appeal to the court, absent "palpable error", we could not have reconsidered the validity of the contract. In Huntington v. Westerfield, 119 La. 615, 44 So. 317 (1907) the court said:
"We are of opinion that the Judgment of the Court of Appeal, upon the first hearing, considered in connection with the refusal of this court to review that judgment, must be regarded, quoad this case, as conclusive of the right of the defendant, sued as surety to set up the plea of usury......"
The opinion of the Court of Appeal is tantamount to a judgment in favor of the *664 defendant declaring the contract valid. An opinion reversing a summary judgment in favor of one party should not be written in terms that may result in a final determination (as the law of the case) granting in effect the benefit of an affirmative adjudication in favor of the opponent to the motion, unless the issues presented are purely legal and utterly devoid of factual considerations.
Such is not the case here. Though this contract may be found valid, it cannot be so held in the present posture of the case.
The judgment of the district court granting the summary judgment is therefore reversed, the opinion of the Court of Appeal is annulled and the original opinion of this court is recalled. The case is remanded to the Civil District Court for the Parish of Orleans for a determination as to whether the prayer for injunction is moot, for further proceedings as necessitated by that determination, and for trial of the plaintiffs' claim for damages.
DENNIS, J., concurs with reasons.
NOTES
[*] The Honorable Gerald P. Fedoroff participated in this decision as an Associate Justice Ad Hoc in place of Associate Justice Harry T. Lemmon, who was recused.
[*] Judge Gerald P. Federoff participated in this decision as an associate justice ad hoc for Justice Harry T. Lemmon who is recused.
[1] R.S. 12:75(D):

"A person whose shares are pledged shall be entitled to vote thereon unless and until such shares have been transferred on the books of the corporation to the pledgee; and thereafter the pledgee shall be entitled to vote thereon."
[2] C.C.P. art. 968 provides:

"Judgments on the pleadings, and summary judgments, are final judgments and shall be rendered and signed in the same manner and with the same effect as if a trial had been had upon evidence regularly adduced...."