REGAN, Judge.
The plaintiff, Mrs. Angelina Najolia Granier, filed this suit against the defendant, Aetna Insurance Company, the automobile liability insurer of her husband, Warren Granier, endeavoring to recover a considerable sum of money for the wrongful death of her minor son, Rickey Granier, which she asserts was caused through the negligence of her husband in the operation of his motortruck.
*134 The defendant answered and denied the foregoing accusations of negligence. In the alternative, it pleaded that the plaintiff was contributorily negligent in permitting her child to ride in the rear of the truck, and finally, it pleaded the affirmative defense of compromise and release as a bar to the suit.
From a judgment in favor of the plaintiff, in the amount of $10,000.00, the defendant has prosecuted this appeal.
The record discloses that on March 3, 1963, the plaintiff’s husband, Warren Gran-ier, was operating his Ford pickup truck on U. S. Highway 90 in a westerly direction. Rickey Granier, the plaintiff’s son, was riding in the rear of this truck with his brother. A third child was riding in the cab of the truck seated next to his father.
Granier and his sons were proceeding to go on a fishing trip, and therefore, he was towing a boat and trailer behind the truck. When they were about four miles west of the Huey P. Long Bridge, a rear tire of the truck blew out, causing the trailer to “jackknife”, which in turn caused a heavy tire and wheel which was unsecured in the bed of the truck to strike and kill Rickey Granier.
The questions thus posed for our consideration are three in number, and they are whether Granier was negligent in the operation of the vehicle; was Mrs. Granier guilty of negligence in permitting her 9i/á year old son to ride in the rear thereof, and lastly, whether the defense of compromise and the release upon which it is predicated constitutes a valid bar to the plaintiff’s recovery herein.
Counsel for the defendant argues that Granier was not negligent and that in the alternative, Mrs. Granier was guilty of fault; however, a simple analysis of the record discloses that these arguments are not legally sound. The undisputed facts reveal that Granier, who, incidentally, operated a service station, had placed a worn, four-ply spare tire on the rear wheel of his truck, pending repair of a better eight-ply tire. When this tire was repaired, he placed it in the rear of the truck with the intention of installing it in place of the defective tire the following day. Apparently through an oversight, Granier began his fishing trip without changing the tire and also without securing the heavy eight-ply tire and wheel to the bed of the truck. Despite knowing that a dangerous tire was on one wheel of the truck, he nevertheless attached a 14 foot boat and 40 horsepower motor mounted on a two wheel trailer to the rear thereof. When the tire blew out, the evidence disclosed that he was driving at a speed of at least 55 miles per hour.
In view of these facts, we are convinced that Granier was at fault. The combined knowledge of the existence of the defective tire, the unsecured position of the repaired tire and wheel in the bed of the truck, and the fact that the trailer, boat and motor were in tow, were sufficient to cause any reasonable man of mature years to realize the extreme danger that a child riding in the rear of the truck was exposed to.
We are likewise convinced that the defendant’s contention that 'Mrs. Granier was guilty of negligence is without merit. The lower court found, and the record amply confirms this finding, that no evidence was introduced to support the accusation of negligence or to refute her testimony that she was not aware of the fact that her deceased son was riding in the rear of the truck, or that a defective spare tire was being used when the accident occurred.
The only defense offered by the defendant which is of any real significance is the one of compromise. The defendant introduced into evidence a document purporting to be a “release of all claims”. This document, signed by Mr.[1] and Mrs. Granier, purports to be a release by the Graniers of the de *135 fendant “from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which the undersigned now has/have or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries and property damage and the consequences thereof resulting or to result from the accident, casualty or event which occurred on or about the 3rd day of March, 1963, at or near New Orleans, Louisiana.”
It is significant that we relate some of the chronology of events leading up to the securing, by the defendant, of the foregoing release.
The funeral expenses for the burial of the plaintiff’s child exceeded the $2,000.00 policy limit on that exposure. Consequently, two adjusters representing the defendant contacted Granier and arranged a conference with him and Mrs. Granier at their home. During the course thereof, it was explained by these gentlemen that the insurer acknowledged its liability for $2,000.00, the limit of its burial expense coverage, and they further suggested in very general and nebulous terms that the entire matter be closed and that the quicker it was disposed of, the sooner the death of the child would be forgotten. It was never specifically explained to Mrs. Granier that proof of the negligence of her husband in connection with the operation of his truck would entitle her to recover from the defendant for the death of her child. In any event, in the course of this conference, two checks were issued: one in the amount of $2,000.00 to cover the burial expenses incurred and the other check for $2,000.00 upon which was inscribed “for full release for all claims for death of son”. This clause never appeared in the release. The record is clear that the adjusters indicated that this extra payment of $2,000.00 was being made by the insurers to help defray the extra cost of the burial, which as we said, had exceeded the $2,000.00 policy limit on that exposure.
The foregoing conference lasted for approximately 45 minutes, part of which time Mrs. Granier was out of the room, thereafter both Mr. and Mrs. Granier signed the release. To reiterate for the purpose of emphasis, the adjusters never specifically advised the plaintiff that the release was in full settlement of her rights arising out of the death of her son. When the adjusters departed, Mrs. Granier examined the checks and noticed the notation on one of them that it was given in settlement of her claim for the death of her child. She immediately contacted her husband, and they then consulted an attorney. Thereafter, she repudiated any intention of releasing her claim for the boy’s death. Upon the advice of her attorney, she did not cash this check but promptly returned it to the insurer.
Counsel for plaintiff attacks the validity of the release, predicating his argument on the rationale emanating from Civil Code Article 3071.[2] He insists that the release is invalid because it does not meet the requirement of Louisiana law to the effect that a contract or compromise must be in writing, complete in itself, and susceptible of understanding without the necessity of parol evidence to explain its terms. He relies upon the rationale emanating from the case of Johnson v. National Casualty Co.,[3] which evolved from a situation strikingly similar to this one. In that case, the organ for the court rationalized as follows:
“ * * * The defendant insurance company’s sole object, of course, was to obtain and have executed a contract of
*136 compromise and settlement, under which the plaintiffs were to accept a certain sum in full settlement and payment of any and all claims they may have against it and the insured under the policy issued by it, arising out of the death of their son. When we read the document itself, however, we find that it does not state that at all. The document, styled a ‘Release’, begins by reciting that ‘Whereas, the undersigned (the two plaintiffs) was injured and his property damaged on or about the 24th., day of August, 1935, under circumstances claimed to render’ the defendants liable in damages, etc., and it then goes on to state the consideration for the compromise stipulated as being the sum of $50, ‘the receipt of which is hereby acknowledged,’ and for which they forever discharge the insurance company and the insured from any claims, cause of action or demand they may have ‘by reason of said injuries and damage to property; or by reason of any cause, matter or thing whatever prior to the date hereof.’ The last-quoted clause, we think, is not sufficient of itself to convey the idea that it was the intention- of the parties to release any one from liability for damages resulting from the death of their son, especially zithen no mention whatever is made of any such damages. * * *" (Emphasis added.)
“Viewed in the light of its own terms, the purported release executed by the plaintiffs seems to be far from complete as a contract of compromise such as it was intended to be. As shown by the note of testimony, there was much left to be explained by parol proof. In Lampkins v. Vicksburg, S. & P. R.R.Co., 42 La.Ann. 997, 8 So. 530, 531, our Supreme Court stated that the contract of compromise is null if it is imperfect and misunderstood. 'To be valid as a transaction, this contract must be complete in itself, and nothing left to be established by parol proof.’ ”[4] (Emphasis added.)
In his reasons for judgment, the judge of the lower court wrote with emphasis that in his opinion the release executed by the plaintiff did not meet the basic or fundamental requirements necessary to confect a binding agreement of compromise, since the terms thereof made no reference to the fact that it was in settlement of a claim for the death of the child. In addition thereto, the lower court concluded that Mrs. Granier was induced to sign the purported release through ignorance, error, and a misunderstanding of its subject matter and import.
While the lower court did not refer to the Johnson case, we are convinced that the rationale thereof is especially applicable hereto and renders the release invalid. The evidence discloses that the substance of the conversation which transpired between the adjusters and the Graniers was the settlement of the claim for burial expenses. There is nothing in the release, per se, to indicate that it was intended to settle the claim for wrongful death, and considered alone, it could apply to either the burial expense claim, the wrongful death claim, both claims, or, in fact, any other claim.
An additional reason which renders the release invalid is since Mrs. Granier balked when she became aware that the second check was in settlement of her claim for her child’s death, and since she signed the document with no intention of settling this claim, it is quite obvious that even if the release was sufficiently definite so as to constitute a valid compromise for the death of the child, it is very evident that Mrs. Granier signed it through error, without knowing its true nature and import. The error under which Mrs. Granier labored, whether it be error on her part or induced through the artifice of the insurance adjusters, was sufficient to vitiate the com *137 promise agreement and render it null and void.
The lower court awarded $10,000.00 for the death of the child, and this award is in conformity with the rationale emanating from the most recent jurisprudence and is also in accord with the permitted exercise of the trial judge’s discretion.
For the foregoing reasons, the judgment of the lower court is affirmed. The defendant is to pay all costs incurred herein.
Affirmed.

. While it is of no significance, it was never explained why the insurer procured the signature of Mr. Granier, since he was, in effect, a codefendant.

. La.C.C. Art. 3071. “A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust tlicir differences by mutual consent, in the manner which they agree on, and which everyone of them prefers to the hope of gaining, balanced by the danger of losing.
“This contract must be reduced into writing.”

. La.App., 176 So. 235 (1937).

. See also Francois v. Maison Blanche Realty Co., 134 Laf. 215, 63 So. 880 (1913); Waagen v. Indiana Lumbermen’s Mutual Insurance Company, La.App., 136 So.2d 831 (1962).