REGAN, Judge.
The plaintiffs, Gerald Wells and his wife, Carole Wells, filed this suit against the defendants, Frank Aguillard, Jr., and his liability insurer, The Continental Insurance Companies endeavoring to recover the sum of $68,883.00, in addition to medical expenses which they assert represents the damage incurred by them as the result of Aguillard’s negligent operation of his motor vehicle.
The defendants answered generally denying the plaintiff’s accusations of negligence, and asserted that subsequent to the accident Gerald Wells compromised his claim releasing the defendants from all liability.
Following a trial on the merits, judgment was rendered in favor of the plaintiffs awarding Gerald Wells $1,536.06 and Carole Wells $2,000.00, as well as expert fees in the amount of $100.00, against the defendants, Frank Aguillard, Jr., and The Continental Insurance Companies, jointly, severally and in solido. From that judgment, the defendant, The Continental Insurance Companies, has prosecuted this appeal.[1]
The only significant questions posed for our consideration are whether the trial court erred in failing to give effect to the release executed by Wells as a bar to his recovery for damages for personal injuries, and, whether the amount of damages awarded Wells and his wife is excessive.
The record discloses that on April 14, 1967, Mrs. Wells was riding as a guest passenger in the automobile driven by her husband, Gerald Wells, when it was struck from the rear by a vehicle owned and operated by Frank Aguillard, Jr.
Counsel for defendant argues that Wells entered into a compromise with the defendant releasing it from all liability insofar as he was concerned. Wells contends that the release which he executed was merely for damage to his automobile. He explained that he telephoned The Continental Insurance Companies and requested its representative to repair his automobile because he needed it for commuting to and from work. Although the document is entitled “Release Of All Claims,” he explained that when he signed the instrument he was under the impression it was a release for damage to his automobile but not for personal injury. The release stated that the insurer was to pay $233.00 in settlement of plaintiffs’ claim, and the bill for automobile *691 repairs was in the amount of $232.96. The draft issued by The Continental Insurance Companies payable to Gerald J. Wells was in the amount of $233.00 and typed thereon were the words “In full and final settlement of all claims arising from loss of 04/14/67.” This sum was four cents more than the cost of the automotive repairs. Wells admitted that he did not remember discussing his claim for personal injury with the insurance adjuster, but pointed out that the adjuster did not question him in connection therewith. He admitted that he did not read the release. The insurance adjuster was not called by the defendant as a witness; therefore, the legal presumption is that his testimony would have been adverse to the defendants.
Louisiana Civil Code Article 3071 provides :
“Art. 3071. A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be reduced into writing.”
In Lampkins v. Vicksburg, S. & P. R. Co.[2] the organ for the Supreme Court stated that the contract of compromise is null if it is imperfect and misunderstood. “To be valid as a transaction, this contract must be complete in itself, and nothing left to be established by parol proof.”
The trial judge in the course of this litigation expressed the opinion that the release was obtained by deceit, and construed against the defendant its failure to introduce the testimony of the insurance adjuster.
Our analysis of the record convinces us that there was no error in the conclusion reached by the lower court. To reiterate, only for the purpose of emphasis, the amount paid by the insurance company and the cost of the repair to the automobile differ by only four cents, and it is obvious that it was the intent of Wells to release the defendant from liability for damage to his motor vehicle and not from the liability emanating from personal injuries.
The second question posed for our consideration is one of quantum. Judgment was rendered awarding Gerald Wells $1,536.06 for medical expenses for himself and his wife, his pain and suffering and his wife’s loss of wages. Judgment was rendered in favor of Mrs. Wells in the amount of $2,000.00 for her pain and suffering. An expert fee of $100.00 was awarded to Dr. Rabin for his testimony.
Dr. Carl H. Rabin, the treating physician of both Mr. and Mrs. Wells, testified that he saw them on the day of the accident. Dr. Rabin stated that his physical examination of Wells revealed spasm and tenderness of the right and left trapezius muscles and restricted forward bending of the head and neck with reversal of the cervical lordotic curvature. Based on these findings, x-rays studies, and Wells’ personal history, he diagnosed his condition as a mild to moderately severe cervical strain for which he prescribed a muscle relaxant and analgesic. Ultrasonic physiotherapy was given only on April 14 and 15, 1967, because Wells explained he was unable to afford further treatment.
Dr. Rabin testified Mrs. Wells complained of pain and stiffness in her neck with greater severity on the right side radiating to the right upper extremity of her fingertips accompanied by headaches, dizziness, nervousness, pain in swallowing, *692 and inability to pick up heavy objects with the right arm because of pain referred to her right shoulder. He further testified that his physical examination revealed spasticity and tenderness in both trapezius zones and in the right scalene zones with restriction in forward bending of the head and neck, limited extension and right and left lateral bending, and complete reversal of the cervical lordotic curvature. The left shoulder was found to be normal but the right shoulder revealed tightness and tenderness of the shoulder girdle muscles, and abduction of the right upper extremity from the side to straight overhead was limited approximately 90° as was forward flexion from the side straight overhead and to the front. His diagnosis was a moderately severe cervical strain and strain of the right shoulder girdle muscles for which he prescribed a muscular relaxant and analgesic, and she was treated with physiotherapy from April 14 until May 17, 1967, after which she used a heating pad on her neck.
Dr. Rabin, to reiterate to some extent, related that his bill for services rendered Wells was $64.00 and $250.00 for services to his wife. Other medical expenses included $50.00 for x-rays and $18.82 for medication for both Wells and his wife; and $19.86 for a cervical collar worn by Wells.[3] The medical charges totalled $88.68.
Mrs. Wells asserted that she was treated by Dr. Rabin for approximately two and one-half months and was unable to return to work for three weeks after the accident thus sustaining a $100.00 loss of wages. She stated that she suffered with pain in her neck for approximately one year after the accident and that she has continued to experience pain periodically.
Wells testified that he suffered pain in his neck as the result of the injuries he sustained, and he wore a cervical collar for three weeks following the accident, slept on a hard bed and used a heating pad for two months. He explained that he returned to work three days after the accident, because of his financial condition, despite the presence of constant pain for approximately two and one-half months. He pointed out that he has continued to experience pain occasionally.
In the landmark case of Gaspard v. Le-Maire,[4] on rehearing, the Supreme Court quoted approvingly from White v. Robbins,[5] as follows:
“ ‘It is true that awards made should not be all out of proportion with previous awards made for somewhat similar injuries. * * * ’
‘However, in using the awards made in previous cases as a guide to evaluate the award of damages for the particular injuries involved in a subsequent case, the reviewing court must take into consideration that each case is decided on the basis of its own peculiar factual circumstances, which may vary greatly from case to case even involving somewhat similar injuries. * * * Since an award of damages for personal injuries is of necessity somewhat arbitrary and also must vary greatly with the facts and circumstances of each case, the trial court is entrusted with large discretion in making such awards, which discretion ordinarily should not be disturbed on appellate review. * * *
‘Thus, on appellate review of a trial court award for pain and suffering, the question is not to calculate with any mathematical exactitude any fixed amount as alone proper under the circumstances, nor to attempt to reconcile widely variable and in fact irreconcilable past awards for injuries which in the abbreviated appellate discussion of them seem somewhat similar. The function of the reviewing court is simply to determine •whether the present trial court award is *693 manifestly excessive or manifestly insufficient under all the circumstances of the present case,’ ” (Emphasis added.)
Our analysis of the record and the jurisprudence [6] applicable to the facts contained therein convinces us that there was no abuse of discretion by the trial court in its award of damages for personal injuries.
For the foregoing reasons, the judgment of the lower court is affirmed.
The defendant is to pay all costs incurred herein.
Affirmed.

. At the trial, liability of the defendants was stipulated, and on motion of the plaintiffs this suit was dismissed with prejudice as to Frank Aguillard, Jr., in March of 1970.

. 42 La.App. 997, 8 So. 530 (1890); see also Granier v. Aetna Insurance Company, La.App., 209 So.2d 132 (1968).

.Wells testified that Dr. Rabin prescribed the collar; however, the doctor denied this.

. 245 La. 239, 158 So.2d 149 (1963).

. 153 So.2d 165 (1963).

. See Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1962) ; Knotts v. State Farm Mutual Automobile Insurance Company, La.App., 225 So.2d 222 (1969) ; Carlisle v. Employers Mutuals of Wausau, La.App., 220 So.2d 152 (1969) ; Morrise v. National Union Insurance Companies, La.App., 209 So.2d 116 (1968).