276 So.2d 914 (1973)
Joseph Edgar CHAMPAGNE
v.
The TRAVELERS INSURANCE CO.
No. 5403.
Court of Appeal of Louisiana, Fourth Circuit.
April 3, 1973.
Rehearing Denied May 1, 1973.
*915 Wendell E. Tanner, Slidell, Thomas A. Lussen, Jr., and L. H. Olivier, Lafayette, for plaintiff-appellant.
Ogden, Ogden & Cocke, Alexander C. Cocke, Jr., New Orleans, for Hartford Ins. Co.
Before STOULIG, SCHOTT and BAILES, JJ.
SCHOTT, Judge.
This is an appeal from a summary judgment in favor of Hartford Insurance Company. This tort action was filed against Hartford as the liability insurer of the American Bank and Travelers Insurance Company is the liability insurer of Payne Supply Company, Inc.
Plaintiff alleges that on January 12, 1970, at about 5:00 PM, while in the employ of one Benny Raziano, he was doing electrical work on a temporary building owned by the American Bank. Another Raziano employee, engaged in securing a carport or portico to the temporary building so that it could be moved to a new location, asked plaintiff to assist him. While plaintiff was assisting his coemployee by steadying a brace supporting the roof of the portico the roof fell on plaintiff causing him injury. The petition continues with the following:
"The accident was contributed to and/or caused by the negligence of the American Bank, in the following nonexclusive (sic) particulars among others to be presented at the trial of this matter:
a. Maintaining a (sic) unsafe condition on its premises.
b. Failing to properly inspect its premises so as to alleviate an unsafe condition, which existed on the premises.
c. Failing to warn petitioner of the unsafe condition which existed on the premises.
d. Failing to do what it should have done and see what it should have seen in order to avoid the accident."
In its answer, Hartford denied that the building was owned by the bank and affirmatively alleged that prior to the accident the bank had sold the temporary building to Raziano and had vacated the building.
In support of its motion for summary judgment based upon the fact that the temporary building was not owned by the bank at the time of the accident, there was filed an affidavit by the president of the *916 bank to the effect that the portable temporary building had been placed on the bank's property in Luling, Louisiana, for use as a temporary branch bank. Upon completion of the permanent building the bank invited bids for the temporary structure. On January 2, 1970, Raziano submitted a bid which was accepted by the bank on January 9, and "on January 12, 1970, the bank vacated the former temporary quarters." The affidavit goes on to say that "at the time of the alleged injury to Joseph Edgar Champagne at 5:00 PM, on January 12, 1970, the American Bank was not the owner of the temporary building in question and exercised no control over it."
The bid and its acceptance are as follows:

Countervailing affidavits filed by plaintiff consist of one by a civil engineer attesting to an inspection he made of photographs of the structure and his opinion that *917 the construction of the portico roof was unsound and that this condition was the cause of the failure; one by the plaintiff to the effect "that on January 12, 1970, he was injured in an accident which occurred at the temporary building used by American Bank in Luling, Louisiana. That on that date employees of American Bank were engaged in removing furniture from the building;" and one by Benny Raziano to the effect that he was the successful bidder for the temporary building located on the bank's premises, that at the time of the submission the building was owned by the bank and "that while he was in the process of accepting delivery of the building and while the building was still on the premises of American Bank the accident in which Joseph Edgar Champagne was injured occurred."
In support of his contention that the summary judgment should have been denied, plaintiff contends that there is an issue as to whether the building involved was movable or immovable. He contends that pursuant to Art. 464 the building was immovable by nature and the documents relied upon by the bank to prove a sale do not comply with the law controlling sales of immovables. Plaintiff also contends that if there was a sale of the building it was conditioned upon the removal of the building, that such was a suspensive condition which under Art. 2471 would have the effect that the transfer of the building would not take place until the fulfillment of the suspensive condition.
With respect to the first contention, if upon trial of the case the portable temporary building were held to be an immovable by nature in accordance with Art. 464 of the Civil Code, the only pertinent legal requirements for its sale are contained in Art. 2440 to the effect that such sales shall be made either by authentic act or under private signature and that a verbal sale of an immovable is null and void as to third parties. Thus, the agreement, is sufficient as to form. It also meets the substantial requirements for a sale under Art. 2456:
"The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."
The sale does contain a condition as authorized by Art. 2457 but the issue is whether or not such condition was a suspensive condition. The problem is resolved upon consideration of the following:
"Art. 2043. The obligation contracted on a suspensive condition, is that which depends, either on a future and uncertain event, or on an event which has actually taken place, without its being yet known to the parties.
"In the former case, the obligation can not be executed till after the event; in the latter, the obligation has its effect from the day on which it was contracted, but it can not be enforced until the event be known."
"Art. 2045. The dissolving condition is that which, when accomplished, operates the revocation of the obligation, placing matters in the same state as though the obligation had not existed.
"It does not suspend the execution of the obligation; it only obliges the creditor to restore what he has received, in case the event provided for in the condition takes place."
It follows that the concept of a suspensive condition involves the occurrence of an event or circumstance beyond the control of the contracting parties so that it has no application to the condition assumed by Raziano to remove the building from the bank's property. Rather, the agreement was made upon the dissolving condition that if the building was not removed by Raziano there would be a revocation of the obligation. Thus, the agreement contained a resolutory condition but not a suspensive condition as argued by plaintiff.
*918 It is also significant that according to his affidavit Raziano was in the process of accepting delivery of the building when the accident occurred. He was already exercising dominion over the building as its owner by proceeding with its removal. These facts demonstrate that the bank no longer had legal responsibility for the building especially considering the following articles of the Civil Code:
"Art. 2467. As soon as the contract of sale is completed, the thing sold is at the risk of the buyer, but with the following modifications."
"Art. 2468. Until the thing sold is delivered to the buyer, the seller is obliged to guard it as a faithful administrator; and if, through want of this care, the thing is destroyed, or its value diminished, the seller is responsible for the loss."
In the application of LSA-C.C.P. Art. 966, so as to determine whether there is a genuine issue as to material fact and whether mover is entitled to judgment as a matter of law, we are guided by a line of jurisprudence which places a heavy burden upon a party seeking a summary judgment. In deciding whether the motion for summary judgment in favor of Hartford was properly granted by the trial court, we must resolve all reasonable doubt as to the existence of a genuine issue of material fact against Hartford. Latter & Blum, Inc. v. Von Ruekfrang, 249 So.2d 229, 4th Cir., 1971.
But no such doubt is suggested by the pleadings, affidavits and exhibits on file in the record. The only other element not already discussed which might suggest itself is that under the terms of the sale the bank was to vacate the building before its removal. The bank's president recites that on January 12, 1970, the bank vacated the former temporary quarters and at the time of the alleged injury at 5:00 PM on that date it exercised no control over the building. The plaintiff's affidavit does not contradict that statement because he states only that on January 12, 1970, the bank employees were engaged in moving furniture from the building, but he does not negate the fact that at the time of this accident that removal had been completed. Furthermore, the Raziano affidavit to the effect that he was in the process of accepting delivery would tend to corroborate the fact that the building had already been vacated since this was a prerequisite to Raziano's taking over the building.
If this case were resolved in favor of the plaintiff and the case were sent back to a trial, we cannot surmise what type of evidence might be introduced under the pleadings which might then entitle the plaintiff to a judgment against Hartford as a matter of law. The written contract of the sale itself has not been challenged by plaintiff, and there is no dispute as to the status of the conditions in the agreement as of the time of the accident. The only argument is over the legal effect of those conditions which were correctly resolved in favor of Hartford in the trial court.
Accordingly the judgment is affirmed.
Affirmed.