295 So.2d 194 (1974)
John C. BUGG, Sr., et al.
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al.
No. 6238.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 1974.
Baggett, Hawsey, McClain & Morgan (Robert E. Morgan, Lake Charles, for plaintiffs-appellants.
Adams & Reese (Timothy G. Schafer) New Orleans, for United Services Automobile Ass'n, defendant-appellee.
Porteous, Toledano, Hainkel & Johnson (C. Gordon Johnson, Jr.) New Orleans, for *195 State Farm Mut. Auto. Ins. Co., defendant-appellee.
Before REDMANN, SCHOTT and MORIAL, JJ.
SCHOTT, Judge.
Plaintiffs, who are the surviving spouse and children of Mrs. Minnie Bugg, filed suit for damages resulting from her death on March 20, 1971, allegedly caused by the negligence of E. H. Stolzenberg, Jr., and Cornelius Holcomb, Sr., in an automobile accident which occurred on January 27, 1971. As to plaintiff, John C. Bugg, Jr., defendants, United States Automobile Association and State Farm Mutual Automobile Insurance Company, the liability insurers of the alleged tort feasors, defended on the ground that Bugg had compromised his claim and effectively released them. This defense has no application to the suit as far as the other plaintiffs are concerned.
The insurers filed a motion for summary judgment pursuant to LSA-C.C.P. Art. 966, which motions were granted by the trial judge. From these judgments plaintiff, John C. Bugg, Jr., has taken this appeal.
The motions for summary judment were granted notwithstanding an affidavit by Bugg in opposition on the basis of a written document entitled "Release of all Claims" executed on October 19, 1971, by Bugg and his wife, and reading as follows:
"KNOW YE, That I/We John C. Bugg, Jr. and Jean Bugg individually and as husband and wife, who at the time of the accident reside at 2110 Easter Lane, New Orleans, Louisiana 70114, for and in consideration of the sum of Three Hundred dollars and 00/100Dollars ($300.00) to me/us in hand paid by Cornelius C. Holcomb, Sr., United Services Automobile Association, Edmond Stolzenberg and State Farm Insurance Company, the receipt of which is hereby acknowledged. I/We being of lawful age, for myself/ourselves, my/our heirs, administrators, executors, successors and assigns hereby remise, release, acquit and forever discharge the said Cornelius C. Holcomb, Sr., United Services Automobile Association, Edmond Stolzenberg, Jr., and State Farm Insurance Co., his/her successors and assigns, and/or his, her, their, and each of their associates, heirs, executors and administrators, and any and all other persons associations and/or corporation, whether herein named or referred to or not, of and from any and every claim, demand, right, or cause of action of whatever kind or nature, either in law or in equity, especially the liability arising from an accident which occurred on or about the 27th day of January, 1971 at or near New Orleans, Louisiana, for which I/We have claimed the said Cornelius C. Holcomb, Jr., United Service Automobile Association, Edmond Stolzenberg and State Farm Ins. Co., to be legally liable, but this release shall not be construed as an admission of such liability."
In his affidavit Bugg recited the following:
"In the automobile accident giving rise to this action, appearer sustained property damage to the 1968 Volkswagon owned by appearer, which property damage exceeded $800 for repair costs, which were paid for by appearer's collision insurer, except for the $100 deductible. In addition to the $100 deductible portion of the repair costs, appearer incurred taxi charges, charges for rental of a replacement automobile, and medical expenses, amounting to less than $100, for the medical expenses of appearer's wife, Jean B. Bugg. Jean B. Bugg sustained a muscle pull in her neck as a result of the collision.
"Sometime after the accident appearer and his wife were contacted by an adjuster for United Services Automobile Association, and a discussion was had between the adjuster, appearer and his wife, and terms were reached for amicable *196 settlement of appearer's expenses for his wife's medical bills, for taxi fare, for rental of a replacement automobile, and for the $100 deductible portion of the property damage. It was also discussed that Mrs. Jean B. Bugg had sustained a neck injury as a result of the collision. It was agreed between the three parties that a total of $300 would be paid to Mr. and Mrs. Bugg, which was only to be payment for the pain and suffering of Jean B. Bugg, for her medical expenses, for the taxi fare incurred as a result of the damage to appearer's Volkswagon automobile, for rental charges for replacement automobile, and the $100 deductible portion of the property damage to the Volkswagon. It was specifically agreed that the release was directed only to those items of damages. At no time was there any discussion that such sum, or any release therefor, would release appearer's claim for the death of his mother, Mrs. John C. Bugg, Sr., as a result of the accident, or of the claim of her estate for her physical pain and suffering following the accident.
"After the matter was discussed with the adjuster for United Services Automobile Association over the telephone, the adjuster sent appearer a release and a check in the mail, and the release was executed by appearer and his wife, then returned to the adjuster.
"The only intention of appearer and his wife in executing the release was to release the claim above stated, and there was no intention whatsoever on the part of either the adjuster for United Services Automobile Association or on the part of appearer to release any claim for the wrongful death of Mrs. John C. Bugg, Jr. or her pain and suffering."
In this Court Bugg contends that the release is not valid because it cannot be understood without admitting parol testimony to explain the meaning of the words in the release "for which I/We have claimed," and that the affidavit filed by him shows that there are material issues of fact which preclude the appropriateness of a summary judgment.
Since this case is before us on granted motions for a summary judgment, there is a heavy burden resting upon the insurers to support the judgments. All reasonable doubt as to the existence of a genuine issue of material fact must be resolved against them in our analysis of the record. Champagne v. Travelers Insurance Co., 276 So.2d 914 (La.App. 4th Cir. 1973); Latter & Blum, Inc. v. Von Roekfrang, 249 So.2d 229 (La.App. 4th Cir. 1971). Applying these principles to the language of the release and that of the affidavit, which alone are relied upon by the insurers to support the summary judgment in their favor, we find that there are reasonable doubts to be resolved against the insurer and the judgments cannot be affirmed.
The affidavit spells out that the discussion among the adjuster and Mr. and Mrs. Bugg was devoted to settlement of Bugg's property damage, his wife's medical bills and her minor injury resulting from the collision, and that "it was specifically agreed that the release was directed only to those items of damage." There was no mention made of Bugg's claim for the death of his mother. Certainly these details from the affidavit raise reasonable doubts against the insurer's position that the release was intended to include the wrongful death claim. Furthermore, plaintiff in his affidavit states that the only intention he had was to settle the claims exclusive of the wrongful death action, but that there was no intention on the part of any of the participants in the discussion to settle that aspect of the case. If neither side to the compromise agreement intended to release the death claim it follows that such claim was not settled. Furthermore, a party can prove the mental intention of another by logical inference from the other's words and deeds so that the affidavit does place reasonable doubts as to the insurers' *197 intention in making the settlement which, for our purposes here, must be resolved against them.
The insurers make much over the fact that Bugg has admitted that the release was valid with respect to those items which he intended to release, and they rely on the case of Darensbourg v. Columbia Casualty Company, 140 So.2d 241 (La.App. 4th Cir. 1962) for the proposition that a compromise agreement "can only be held to be valid or invalid in its entirety." They argue that since Bugg has admitted its validity in one respect he is bound to its validity in all respects. The dicta from the cited case is not dispositive of the issue in this case. Parties can and often do compromise parts of claims, for example, property damage, and reserve rights with respect to other parts, for example, personal injury. This course of action was sanctioned in Wells v. Aguillard, 244 So.2d 689 (La.App. 4th Cir. 1971). While LSA-C. C.P. Art. 425 prohibits the splitting of a cause of action for the purpose of bringing separate lawsuits, nothing in that article prevents a party from contractually settling a claim for a portion of his damages but reserving his right to proceed for the remainder. See Carney v. Hartford Accident & Indemnity Co., 250 So.2d 776 (La. App. 1st Cir. 1970).
Insurers next contend that since Bugg has filed no pleading alleging violence, fraud or error, he would be precluded from offering proof to support his position pursuant to LSA-C.C.P. Art. 856, and based upon the decision in Hicks v. Fidelity-Southern Fire Insurance Co., 251 So.2d 526 (La.App. 1st Cir. 1971) in which the following was said:
"What has happened in this litigation is that despite the absence of pleadings by plaintiffs seeking to annul or avoid the release executed by them the Court has allowed them to avoid the release."
In the instant case Bugg, his father, and his three siblings filed a conventional suit for damages sustained by them as a result of the death of their wife and mother based upon allegations of negligence on the part of defendants. Defendants pleaded the affirmative defense of release and compromise on the part of Bugg. To require Bugg to plead as a condition precedent for his attacking the release would be to require replicatory pleadings which are specifically proscribed by LSA-C.C.P. Art. 852. The case of Trane Company v. Bellevue Baptist Church of Metairie, 233 So.2d 13 (La.App. 4th Cir. 1970) is relied upon by the insurers but is distinguishable in that there the defendant who was attempting to defend against a summary judgment was found to be urging an affirmative defense, although it had not been pled such in its answer. That case in no way supports the proposition that a plaintiff can be required to plead in rebuttal of an affirmative defense to his original petition.
In the case of Granier v. Aetna Insurance Company, 209 So.2d 132 (La.App. 4th Cir. 1968), there was a successful attack on a release obtained from plaintiffs on a showing by them that they intended to release the defendant only with respect to burial expenses for their deceased child but not with respect to their claim for his wrongful death. The court held as follows:
"While the lower court did not refer to the Johnson case,[1] we are convinced that the rationale thereof is especially applicable hereto and renders the release invalid. The evidence discloses that the substance of the conversation which transpired between the adjusters and the Graniers was the settlement of the claim for burial expenses. There is nothing in the release, per se, to indicate that it was intended to settle the claim for wrongful death, and considered alone, it could apply to either the burial expense claim, *198 the wrongful death claim, both claims, or, in fact, any other claim."
The last cited case was tried on the merits and plaintiffs were successful on the basis of their testimony. In the instant case, Bugg's affidavit is certainly sufficient to raise reasonable doubts against the insurers, and, that if the testimony of himself and his wife is consistent with his affidavit and provides the legal basis for the repudiation of the compromise agreement, as in the Granier case, the trial judge may decide in his favor after a trial on the merits.
We also find some similarity to the case of Wells v. Aguillard, supra, in which this Court declined to recognize that a settlement agreement precluded a claim for personal injuries where the plaintiff testified that he did not remember discussing his claim for personal injury with the adjuster, where the adjuster was not called as a defendant witness and a presumption adverse to the defendant was applied, where the plaintiff testified that his discussions centered around the property damage and where the property damage amounted to $232.96 with the settlement amount being $233. In the instant case, Bugg was claiming $100 for his property damage deductible, a number of items of special damage which amounted to less than $100 and some damages for "a muscle pull" in his wife's neck. The amount paid to Bugg in compromise seems consistent with those particular items which he says were in fact settled, but do not seem at all consistent with his claim for the wrongful death of his mother.
Our courts have held that for a compromise to be valid it must be complete in itself and absolutely independent of parol testimony to establish its meaning. LSA-C.C. Art. 3071; Lampkins v. Vicksburg S & P RR Co., 42 La.Ann. 997, 8 So. 530; Johnson v. National Casualty Co., supra; Granier v. Aetna Insurance Company, supra. A fair reading of Bugg's affidavit demonstrates that the compromise agreement does not meet the test. On the contrary, it is obvious that there are issues with respect to its meaning that can only be developed by the testimony of witnesses at trial.
Accordingly, the summary judgment is reversed and the matter is remanded for further proceedings consistent herewith.
Reversed and remanded.
NOTES
[1] Johnson v. National Casualty Co., 176 So. 235 (La.App. 1st Cir. 1937).